**SOCORRO INDEPENDENT SCHOOL DISTRICT, et al., Appellants,**

v.

**STATE BOARD OF EDUCATION, Appellee.**

No. 03–97–00539–CV.

Court of Appeals of Texas, Austin.

April 30, 1998.

Randall B. Wood, Ray, Wood & Fine, L.L.P., Austin, for appellants.

Dan Morales, Atty. Gen., Toni Hunter, Asst. Atty. Gen., General Litigation Div., Austin, for appellee.

Before POWERS, KIDD and B.A. SMITH, JJ.

KIDD, Justice.

This is a school finance case. Appellant Socorro Independent School District and other school districts [1] (collectively "Socorro")

---

1. Other appellants are: Alpine Independent School District, Balmorhea Independent School District, Belton Independent School District, Commerce Independent School District, Copperas Cove Independent School District, Crowell Independent School District, Del Valle Independent School District, El Paso Independent School District, Everman Independent School District, Fayetteville Independent School District, Florence Independent School District, Friendswood Independent School District, Fr... Independent School District, Goree Independent School District, Hardin–Jefferson Independent School District, Harleton Independent School

District, Hays Consolidated Independent School District, Hitchcock Independent School District, Hudson Independent School District, Hurst–Euless–Bedford Independent School District, Jasper Independent School District, Kenedy Independent School District, Kilgore Independent School District, Lamar Consolidated Independent School District, Little Cypress–Mauriceville Independent School District, Lockhart Independent School District, Los Fresnos Consolidated Independent School District, Lumberton Independent School District, Lytle Independent School District, Manor Independent School District, Mason

argue that pursuant to constitutional and statutory appropriations, they were deprived of approximately $90 million of a supplemental technology allocation that the appellee State Board of Education (the "Board") refused to distribute. After an extensive review of the constitutional and statutory provisions at issue, the trial court declared that the Board had no authority to distribute the amount sought by Socorro to increase the technology allotment. We will affirm.

## BACKGROUND

This case presents the question of whether funds from the available school fund were properly allocated between the state textbook fund and the school finance system pursuant to Texas Education Code section 31.021. In order to fully understand the issues presented in this case, we will first briefly describe how public schools in Texas are financed. Public schools in Texas are financed by three mechanisms: 1) local ad valorem tax revenue, 2) the available school fund, and 3) general revenue from the state. Tex. Educ.Code Ann. § 42.251(b) (West 1996). The state's financial responsibility to fund public schools comes from the latter two sources. Depicted below is a flowchart illustrating the interrelationship between the available school fund and general revenue.[2]

Independent School District, Maypearl Independent School District, Mesquite Independent School District, Midland Independent School District, Millsap Independent School District, Mission Independent School District, Munday Independent School District, Nederland Independent School District, New Boston Independent School District, Orangefield Independent School District, Pflugerville Independent School District, Port Arthur Independent School District, Port Neches–Groves Independent School District, Rocksprings Independent School District, Sabinal Independent School District, San Antonio Independent School District, San Augustine Independent School District, San Saba Independent School District, Savoy Independent School District, Schertz–Cibolo–Universal City

Independent School District, Seguin Independent School District, Silverton Independent School District, Stamford County Line Independent School District, Talco–Bogata Consolidated Independent School District, Texarkana Independent School District, Valley View Independent School District (Hidalgo County), Vidor Independent School District, Waco Independent School District, Wallis–Orchard Independent School District, and Waskom Independent School District.

2. The trial court attached this flowchart to its Final Order as an aid to understanding the issues presented in this case.

TRACING THE $60 MILLION DOLLARS OF GENERAL REVENUE

EXHIBIT A

The available school fund is a constitutional and statutory fund that contains revenue dedicated for public education. *See* Tex. Const. art. VII § 5; Tex. Educ.Code Ann. § 43.001(b) (West 1996). It consists primarily of income derived from the assets of the permanent school fund, which is a perpetual endowment for the public schools that draws enormous amounts of interest, dividends, and rental income. *See* Tex. Educ.Code Ann. § 43.001(b) (West 1996). The available school fund also includes one-fourth of all revenue derived from state occupation and gasoline taxes, as well as other appropriations to the fund made by the Legislature for public school purposes. *See id.*

Article VII, section 5(a) of the Texas Constitution commands that "[t]he available school fund shall be applied annually to the support of the public free schools ... [and] shall be distributed to the several counties according to their scholastic population and applied in such manner as may be provided

by law." Tex. Const. art. VII § 5(a). As demonstrated by the right side of the flow chart, each year the Legislature divides the total amount in the available school fund between the school finance system and the state textbook fund. The majority of the fund is allocated to the school finance system and distributed per capita to the school districts based upon the average daily attendance of the pupils within each district. *See* Tex. Educ.Code Ann. § 43.001(c) (West 1996). The balance of the fund is directed to the state textbook fund pursuant to Texas Education Code section 31.021. *See* Tex. Educ.Code Ann. § 31.021 (West 1996).

On May 27, 1995, the 74th Legislature passed Senate Bill No.1, which included new provisions now codified under Texas Education Code section 31.021. Texas Education Code section 31.021 provides in relevant part:

(a) The state textbook fund consists of:

(1) an amount set aside by the State Board of Education from the available school fund;

(2) all funds accruing from the state's sale of disused textbooks; and

(3) all amounts lawfully paid into the fund from any other source.

(b) The State Board of Education shall annually set aside out of the available school fund of the state an amount sufficient for the board, school districts, and open-enrollment charter schools to purchase and distribute the necessary textbooks for the use of the students of this state for the following school year. The board shall determine the amount of the available school fund to set aside for the state textbook fund based on:

\* \* \*

(2) a requirement to provide an allotment to be distributed to each district equal to $30 per student in average daily attendance, *or a greater amount as determined under Subsection (c) to be used only to:*

   (A) provide for the purchase by school districts of electronic textbooks or technological equipment that contributes to student learning; and

   (B) pay for training educational personnel directly involved in student learning in the appropriate use of electronic textbooks and for providing for access to technological equipment for instructional use;

\* \* \*

(c) After setting aside the amounts specified in Subsection (b), the State Board of Education shall determine *the amount remaining* in the available school fund that is *available* for distribution under Chapter 43 for the following school year. The board shall use *any amount* by which the amount *available* for distribution under Chapter 43 for the following school year *exceeds* the amount available for distribution under Chapter 43 for the 1995–1996 school year to *increase* the allotment under Subsection (b)(2)

Tex. Educ.Code Ann. § 31.021 (West 1996) (emphasis added).

Thus, section 31.021 mandates that the Board fund: (1) an amount necessary to cover costs for print textbooks;[3] (2) an amount equal to $30 per student for electronic textbooks or technological equipment;[4] and, *if available*, (3) a supplemental amount per student in addition to the $30 to be used for technology and electronic textbooks. It is this third element, the supplemental technology allotment, that forms the basis of the controversy at issue.

Subsection (c) of 31.021 mandates that after setting aside the amounts necessary for purchasing textbooks and providing $30 per student for electronic textbooks and technological equipment, as well as emergency expenses caused by unexpected attendance increases, the Board *must:*

1. Determine the amount remaining in the available school fund that is available for distribution under Chapter 43 for the following school year; then,

2. Increase the technology allotment under subsection (b)(2) by the difference between the amount available for the following school year and the amount available for the 1995–1996 school year.

Thus, pursuant to section 31.021(c), any surplus from that calculation must be distributed to supplement the *technology allotment* and not diverted to the *school finance system.*

However, it appears from the record that the General Appropriations Act, passed a few days prior to the enactment of section 31.021,

---

**3.** This amount is mandated by the Texas Constitution, art. VII, § 3, which states, "it shall be the duty of the State Board of Education to set aside a sufficient amount of the said tax to provide free textbooks for the use of children attending the public free schools of this State...." Tex. Const. art. VII, § 3.

**4.** This allotment has been in effect since the 1992–1993 school year.

conflicts with the section 31.021(c) mandate.[5] In the General Appropriations Act, the Legislature followed its constitutional mandate and appropriated the entire available school fund for the upcoming biennium. However, while section 31.021(c) mandated that any increase in the available school fund from the 1995–96 school year be directed to the state textbook fund in order to supplement technology, the General Appropriations Act instead increased the amount appropriated to the school finance system for the 1996–97 school year. The state textbook fund was not increased. It was allocated a sum certain amount of $109 million. This allocation does not provide for any supplemental technology allotment pursuant to section 31.021(c). Thus the Legislature, in the General Appropriations Act, committed the amount necessary for the supplemental technology allotment to the school finance system.

The flowchart more accurately depicts this situation. The middle of the flow chart shows the appropriation of approximately $1.09 billion made by the General Appropriations Act to the school finance system for the 1996–97 school year. This allocation is contrary to the formula set forth in section 31.021(c). Under that formula, the 1996–97 per capita distribution should have remained the same as the 1995–96 distribution, which was approximately $970 million. Any amount in the available school fund in excess of $970 million should have been directed to the state textbook fund to supplement technology. Therefore, as demonstrated by the dotted line on the right side of the flowchart, if the Board issued a supplemental technology allotment pursuant to the formula set forth by section 31.021(c), the necessary funds for this allotment would have to be transferred back to the state textbook fund

from the school finance system. This would leave the school finance system short approximately $60 million dollars.[6]

To avoid a $60 million shortfall, the Board authorized a distribution of $30 per student and refused to authorize a distribution of the $60 million as a supplemental technology allotment as mandated by section 31.021(c). The Board contends on appeal that because the Legislature only appropriated an amount equivalent to $30 per student for technology, that is all it can distribute despite the mandate of section 31.021(c). Socorro, on the other hand, argues that pursuant to section 31.021(c), the Board *must* distribute $60 million to supplement technology, despite any resulting shortfall.

Moreover, Socorro argues that because only $44 million of the $77 million appropriated to the state textbook fund for the purchase of printed textbooks was actually spent on printed textbooks for the school year for which it was appropriated, the $30 million surplus (i.e., the dollars not needed for printed textbooks) should also be used to supplement technology. In summary, Socorro argues that there is a total of approximately $90 million that should have been allocated to supplement technology—$60 million allegedly misappropriated to the school finance system and $30 million not used for purchasing printed textbooks. This $90 million could have supplemented the technology allotment by about $25 per student.

In an extensive written opinion, the trial court[7] declared that the Board had no authority to distribute the increased technology allotment provided for in Texas Education Code section 31.021(c) because the Legislature in the General Appropriations Act had not funded this section of the Code. With regard to the $30 million not yet used for purchasing printed textbooks, the court held

---

5. The General Appropriations Act was passed on May 25, 1995 as House Bill 1.

6. It is unclear how this $60 million dollar balance was calculated. Both parties, however, seem to agree that this is the correct number to use. Therefore, while we express no opinion as to the validity of this amount, we will use this figure throughout the opinion as a symbolic number to represent the excess amount, which according to § 31.021(c) should have been used

to supplement the technology allotment, but which already had been appropriated to the school finance fund.

7. We note that the trial judge in the instant cause presided over *Carrollton–Farmers Branch Independent School District v. Edgewood Independent School District*, 826 S.W.2d 489 (Tex.1992) and gained considerable expertise in the area of school finance.

that the issue was not ripe for decision and retained jurisdiction to grant the school districts further relief in the event that the available school fund was not distributed in its entirety for use in the school year for which it was appropriated. Because the trial court refused to supplement the technology fund, Socorro appeals.

### DISCUSSION

Socorro argues that the language of Article VII, section 5 of the Texas Constitution is a constitutional appropriation which is directed by legislation. Therefore, Socorro argues that section 31.021 of the Texas Education Code is the directive of a constitutional appropriation, or alternatively, is the appropriation itself. Socorro contends that the legislative appropriations in the General Appropriations Act should, therefore, give way to section 31.021.

Socorro is correct in its assertion that Article VII, section 5 constitutionally appropriates the funds at issue. *See* Tex. Const. art. VII, § 5(a). Article VII, section 5(a) of the Texas Constitution states:

> [T]he available school fund should be applied annually *to the support of the public free schools.* Except as provided by this section, no law shall ever be enacted appropriating any part of the permanent or available school fund to any other purpose whatever; nor shall the same, or any part thereof ever be appropriated to or used for the support of any sectarian school; and the available school fund herein provided shall be distributed to the several counties according to their scholastic population and *applied in such a manner as may be provided by law.*

*Id.* (emphasis added).

■ This constitutional appropriation mandates that the funds be spent "in support of the public free schools" on a per capita basis. That, however, is the *end* of the constitutional mandate. Beyond this, authority is given to the Legislature to allocate the money to the public schools as it sees fit. The constitutional provision specifies that the

fund shall be distributed "in such a manner *as may be provided by law.*" *Id.* (emphasis added). Such language has always empowered the Legislature to direct how the fund shall be distributed within the constraints of an equal per capita distribution by county. *See Travis Cent. Appraisal Dist. v. FM Properties Operating Co.,* 947 S.W.2d 724, 733 (Tex.App.—Austin 1997, pet. denied) (when used in a constitutional provision establishing a general legal principle or administrative framework, the phrase "as may be provided by law" clearly vests the Legislature with authority to exert substantial control over the mechanics of the subject matter addressed).

■ In this case, the $60 million at issue was allocated by the Legislature to the school finance system through the General Appropriations Act. The Legislature then provided a *formula* under section 31.021(c) of the state textbook fund for the allocation of surplus funds to provide a supplemental technology allotment. Thus, this case presents two statutes by the Legislature that are conflicting: the mandate in section 31.021(c) directing the Board to set aside $60 million to supplement technology; and the General Appropriations Act which directs those same funds to the school finance system. Therefore, the Board is faced with an unfunded mandate to supplement technology pursuant to section 31.021(c).

The Board does not have the power to expend more money under the state textbook fund than it is appropriated by the Legislature. This issue was squarely addressed in Attorney General Opinion H–507, which we find persuasive.[8] In that case, the Legislature had intentionally changed from appropriating an estimated amount for textbooks to a sum certain appropriation. Because of this, the Comptroller indicated that he would refuse to honor any bill payable from the state textbook fund that would cause expenditures of the fund to exceed the amount specifically allocated in the appropriations act. The opinion stated that only the Legis-

---

**8.** Although Attorney General Opinions are not binding on the courts, they are entitled to careful consideration.

lature had the authority to limit the amount of funds that the Board can set aside out of the available school fund for use in providing free textbooks, and that it had done so by appropriating a sum certain amount to the state textbook fund. Op. Tex. Att'y Gen. No. H–507 (1975) (Legislature has authority to limit amount of funds State Board can set aside out of available school fund for textbooks). In its reasoning, the opinion quoted the following language from Attorney General Opinion O–561:

> [I]t would be a radical departure from recognized principles of our form of government to place control over a large amount of public funds in the hands of such an administrative board, free from all control of the Legislature.... In view of all of the considerations discussed above, it is our opinion that the Legislature retains control over the expenditure of the Textbook Fund....

*Id.* (citing Op. Tex. Att'y Gen. O–561 at 17–18 (1939)).

Moreover, given the chronology in which the General Appropriations Act and section 31.021 passed, the Legislature had the opportunity to revise the General Appropriations Act to provide the Board with funding pursuant to section 31.021(c). However, the Legislature chose *not* to do so. If the Legislature did not see fit to provide funding for this mandate, we can not do it for them. This Court addressed this very issue in *Mutchler v. Texas Dep't of Public Safety*, stating:

> To transfer unrelated surplus funds to pay for a program that the Legislature has consistently refused to fund ... would thwart the intent of the Legislature and violate the spirit, as well as the letter of the Texas Constitution. While the members of this Court are not unsympathetic to the cause advocated persuasively by the appellants, the time honored principle of separation of powers prohibits us from doing what the legislature has refused to do.

681 S.W.2d 282, 285 (Tex.App.—Austin 1984, no writ). Socorro's first point of error is overruled.

Socorro next contends that the excess $30 million dollars appropriated to the state textbook fund for printed textbooks should be distributed as the supplemental technology allotment. Socorro claims that after the Board purchased all of the printed textbooks for the school year in question, $30 million dollars remained in the textbook fund. However, rather than using these excess funds to supplement technology, the Board sought to use the funds to purchase printed textbooks for the following school year.

■ The Board argues that Socorro is not entitled to review of this issue because it is unsupported by the pleadings. Socorro responds that the issue was tried by consent. The trial court did consider this issue, but specifically reserved judgment, holding that it was not ripe for consideration at the time of trial. Furthermore, it is unclear from the record how this $30 million dollars was subsequently spent.[9] Since there is no ruling on this issue from the trial court, nothing is preserved for our review. Socorro's second point of error is overruled.

### CONCLUSION

Having overruled Socorro's two points of error, we affirm the judgment of the trial court.

---

9. Joe Wisnoski, Coordinator for School Finance and Fiscal Analysis at the Texas Education Agency, testified that as of the date of trial, December 19, 1996, he was not aware of any current accounting encumbrances against the $30 million, but he believed that the State Board had designated the funds for the purpose of pre-purchasing textbooks for the following year. The parties' briefs do not address the subsequent treatment of these funds, so it is unclear if the funds were spent in the current (1996–97) year, in order to *pre-purchase* printed textbooks for the next year, or whether the funds were transferred to and spent in the following year (1997–98).