# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00560-CV

**Risk Management Strategies, Inc., Appellant**

**v.**

**Texas Workforce Commission; Commissioner Andres Alcantar;
Commissioner Ronald G. Congleton; and Commissioner Hope Andrade,[1] Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-12-000541, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

Risk Management Strategies, Inc. (RMS) filed a suit for judicial review of the Texas Workforce Commission's decision that individuals serving as caregivers for beneficiaries of RMS's bank trust clients were employees of the individual bank trusts rather than of RMS. RMS also asserted that Commissioners Andres Alcantar, Ronald G. Congleton, and Hope Andrade acted in violation of the Texas Labor Code in making that determination and sought declaratory and injunctive relief. The Commission and the Commissioners filed a plea to the jurisdiction asserting immunity from RMS's claims. The trial court granted the plea to the jurisdiction and dismissed the case. We will affirm the portion of the trial court's judgment dismissing RMS's suit for judicial review and will reverse the portion of the judgment dismissing the claims for declaratory and

---

[1] We substitute Hope Andrade, in her official capacity, as successor to Tom Pauken, as Commissioner of the Texas Workforce Commission. *See* Tex. R. App. P. 7.2(a).

injunctive relief to afford RMS an opportunity to amend its petition to allege an *ultra vires* claim against the Commissioners.

**BACKGROUND**

RMS's client base in Texas is composed of a number of financial institutions, predominantly banks, who serve as trustees of "special needs trusts" established under chapter 142 of the Texas Property Code to facilitate the support and care of certain disabled individuals. *See* Tex. Prop. Code §§ 142.001-.009 (governing management of property recovered in suit by next friend or guardian ad litem). The trusts are typically established by court order to manage funds awarded to individuals who have suffered injuries from accidents or as a result of medical negligence. When the value of a chapter 142 trust's principal exceeds $50,000, the court must appoint a financial institution as the trustee, unless no financial institution is willing to serve as trustee and the appointment of a person other than a financial institution is in the beneficiary's best interest. *Id.* § 142.005(n). A court that creates a chapter 142 trust has continuing jurisdiction and supervisory power over the trust. *Id.* § 142.005(d).

The beneficiaries of chapter 142 special needs trusts often need extensive in-home care. According to RMS, the most appropriate in-home caregiver is often a family member, who is permitted by law to receive monetary compensation from the trust for his or her time spent caring for the trust's beneficiary. RMS's business model consists of entering into a "Client Services Agreement" with the bank serving as trustee of a chapter 142 trust. These agreements state that RMS shall "provide and perform . . . for and on behalf of the Trustee [] employment and related services" for the individuals engaged in caring for the trust's beneficiary, including processing

2

and payment of wages; collection, reporting, and payment of payroll taxes; and payment of unemployment insurance. The agreements provide that:

> The Parties understand and agree that it is their mutual intention under the Agreement that RMS shall do all acts necessary to employ or contract with individuals who will be the employees or independent contractors (hereinafter collectively called "Employer" or "Employees") of RMS and that Trustees shall not in any manner be deemed to be the employer of such persons.

As explained in an affidavit provided by Wells Fargo, one of RMS's clients:

> As Trustee, usually in collaboration with care managers, families, RMS, and other persons concerned for the beneficiary, I assist in arranging for home care services for beneficiaries of special needs trusts. These services are usually authorized under the terms of the trusts, and in some occasions, in accordance with court orders or other instructions of probate judges of the State of Texas. Often, the caregiver is a family member of the beneficiary who terminates outside employment to care for the beneficiary and is compensated from Trust assets by RMS. I routinely contract with RMS for two important reasons.
>
> First, Wells Fargo, in its capacity as Trustee, does not have the in-house resources to hire, pay, and manage employees who care for beneficiaries. Our expertise lies in the management of the assets of the Trust. In my experience, RMS, because of their expertise in employment issues and employee risk management, is in the best position to employ the caregivers; and
>
> Secondly, because of our limited involvement with the caregivers, it does not make sense to style the Trust as the employer. To do so imposes potential employer liability on the Trust, something Wells Fargo desires to avoid. We defer to RMS's expertise regarding compliance issues, especially those involving payment of overtime and fair employment practices. Moreover, if Wells Fargo were an employer or co-employer of a caregiver, Wells Fargo could be subject to law suits by the caregiver as with any other employer, such as wrongful termination, personal injury or other causes of action.

The bank trust clients pay RMS a sum equal to the hourly-rate wages of each caregiver performing services for the trust's beneficiary, as well as all associated governmental taxes, insurance, and

3

fees paid by RMS, including all federal, state, local, unemployment, social security, workers' compensation, and general liability insurance attributable to the caregiver. RMS charges the trust a fee of $100 per caregiver per month.

In August 2011, the Commission sent RMS a letter stating that because it was paying unemployment taxes for the individual caregivers, who the Commission believed were employees of RMS's bank trust clients, RMS was engaging in "payrolling," an activity the Commission considered to be unauthorized under the Texas Unemployment Compensation Act. *See* Tex. Lab. Code §§ 201.001-215.044 (the Act). The Commission informed RMS that, unless it was a licensed staff leasing company, each of its Texas clients must register individually with the Commission, report the payroll for its employees, and pay their unemployment taxes. RMS responded to the Commission by correspondence describing its business model and asserting that it, not its bank trust clients, was the employer of the caregivers and, therefore, was the proper party to pay their unemployment taxes. RMS further explained why it did not believe it was acting as a staff leasing company and was not engaged in "payrolling." After considering this response, the Commission provided RMS with its written "tax determination" that RMS was not the employer of the individuals performing services for RMS's bank trust clients and that those individuals must be reported under accounts established by the Commission for each client. The Commission provided a list of factors it considered in reaching this decision, including that:

- All payroll costs and/or benefits are reimbursed by RMS's bank trust clients or the employees.

- The individuals in most cases had previously been reported by the bank trust clients and were being transferred to RMS by the Client Services Agreements.

4

• The cost of vacations, holidays, medical coverage, or any other employee benefits were borne by or paid by the bank trust clients or the individual employees.

• RMS processes and pays the wages from information transmitted by the bank trust clients or their representatives.

The Commission concluded that, "[e]ven though the Service Agreement purports to make RMS the employer of these individuals," RMS's clients "directly or by delegation, direct and control" them.

RMS requested a review of the Commission's tax determination. *See* 40 Tex. Admin. Code § 815.113 (2015) (Tex. Workforce Comm'n, Comm'n Hearings Involving Coverage & Contributions or Reimbursements). The Commission held an informal administrative hearing in the Special Hearings Department, which was presided over by a Commission hearing officer. After the hearing, the Commission issued a "Decision of the Commission Involving the Tax Liability" of RMS in which it concluded that "the employees involved in this case are not the employees of RMS, but rather the employees of the banks/trusts for which they provide their services." After reviewing RMS's motion for reconsideration, the Commission concluded that its decision was correct.

RMS then filed a suit for judicial review of the Commission's decision in Travis County district court. Thereafter, RMS amended its petition to add a request for a declaration that the individual Commissioners had misconstrued certain provisions of the Act by concluding that the bank trusts, rather than RMS, were the employers responsible for paying the unemployment taxes of the individual caregivers. The Commission and the Commissioners filed a plea to the jurisdiction asserting that sovereign immunity barred RMS's claims. The trial court granted the plea and dismissed the suit. RMS then perfected this appeal.

5

*Suit for Judicial Review*

In its first issue, RMS asserts that, because Texas Labor Code section 212.201 waives the Commission's immunity, the trial court erred in granting the Commission's jurisdictional challenge to its suit for judicial review. Absent legislative waiver, sovereign immunity deprives Texas courts of subject-matter jurisdiction over any suit against a State agency such as the Commission. *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). The Legislature may consent to suits against a state agency by statute or by resolution. *Id.* at 853-54. Whether sovereign immunity has been waived implicates subject-matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law, which we review de novo, when disputed facts relevant to the jurisdictional inquiry are not presented. *See id.* (subject-matter jurisdiction is determined as matter of law on pleadings and when evidence relevant to jurisdictional inquiry is undisputed); *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 85-86 (Tex. App.—Austin 2004, pet. denied).

The jurisdictional analysis in the present case requires us to construe Labor Code section 212.201, a provision that waives the Commission's immunity from certain suits for judicial review. We review questions of statutory construction de novo, *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011), and our primary objective is to give effect to the Legislature's intent as expressed in the language of the statute, *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). We discern legislative intent from the statute

as a whole, not from isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008). Absent an absurd result, we rely on the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008). In addition to these core statutory-construction principles, we are required to strictly construe statutes waiving sovereign immunity. *City of Houston v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006). "[Sovereign] immunity remains intact unless surrendered in express and unequivocal terms by the statute's clear and unambiguous waiver." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012); *see* Tex. Gov't Code § 311.034.

Labor Code section 212.201 provides:

(a)     A party aggrieved by a final decision of the commission may obtain judicial review of the decision by bringing an action in a court of competent jurisdiction for review of the decision against the commission on or after the date on which the decision is final, and not later than the 14th day after that date.

(b)     Each other party to the proceeding before the commission must be made a defendant in an action under this subchapter.

Tex. Lab. Code § 212.201 (entitled "Commencement of Judicial Review; Defendants"). Although the parties agree that section 212.201 is a waiver of the Commission's immunity from suit, they disagree about its scope. RMS contends that this provision is a broad waiver of sovereign immunity for any "decision" made by the Commission, including its determination in the present case that the bank trusts are the employers of the individual caregivers and therefore responsible for paying their unemployment taxes. The Commission counters that this statutory waiver of immunity is limited and pertains only to the Commission's final decisions in disputes regarding claims for

7

unemployment benefits under the Act. RMS's position relies principally on its contention that the phrase "decision of the commission" is not modified by the words "in an unemployment benefits dispute" and, consequently, the plain language of the statute manifests the legislature's intent to waive the Commission's immunity, and thereby permit judicial review, of *any* final decision. Considered in the context of the entire Act, however, section 212.201 does not provide such a sweeping waiver of the Commission's immunity.

Section 212.201 is found in chapter 212 of the Act, which is titled "Dispute Resolution." A review of the other sections in chapter 212 reveals that the "disputes" that are the subject of this chapter are those arising from an employee's claim for unemployment benefits. For example, section 212.001 provides that "disputed claims" must be presented in accordance with rules adopted by the Commission for determining the "rights of parties" to disputed claims. *Id.* § 212.001. The term "claim" is not defined in the Act, but the term "valid claim" is, and means "a claim filed by an unemployed individual who has received the wages necessary to qualify for benefits." *Id.* § 201.011(23).

The other provisions within this chapter are also clearly concerned with the procedure for resolving disputes over claims for unemployment benefits. Section 212.004 provides that "benefits" shall be promptly paid in accordance with (1) a "determination or redetermination" of an examiner, (2) a "decision" of an appeal tribunal, (3) a "decision" of the commission; or (4) a "decision" of a reviewing court. *Id.* § 212.004. This section also provides that "benefits" paid under a determination, redetermination, or decision continue until the determination, redetermination, or decision is modified or reversed by a subsequent redetermination or "decision." *Id.* Section 212.005

8

prohibits any chargeback in the event of the reversal of a determination or decision allowing benefits. *Id.* § 212.005. Section 212.051 provides that if the employer provides information raising an issue affecting the claimant's right to benefits, an examiner determines whether the claimant is entitled to benefits. *Id*. § 212.051. Sections 212.053 and 212.101 provide that either the "claimant" or the claimant's most recent employer may appeal a determination by the examiner, and that the appeal is to an appeal tribunal established by the Commission. *Id.* §§ 212.053, .101. Section 212.151 provides that the Commission may (1) on its own motion affirm, modify, or set aside the appeal tribunal decision, (2) direct the taking of additional evidence, or (3) permit any of the parties to the tribunal decision to initiate a further appeal before the Commission. *Id.* § 212.151. Sections 212.152 and 212.153 provide that the Commission must promptly mail a copy of "its findings and decision" to the parties, and that the "decision" becomes final 14 days after the date the "decision" is mailed unless the Commission reopens the appeal or a party to the appeal files a written motion for rehearing. *Id.* §§ 212.152, .153.

Following these sections, all of which, again, are plainly concerned with the procedure for resolving disputes over claims for unemployment benefits, is section 212.201. This section provides that "a party aggrieved by a final decision of the commission may obtain judicial review of the decision." *Id.* § 212.201. It is apparent from its context that the "decision" referred to in this section is the Commission's decision on a claim for unemployment benefits that has worked its way through the procedures set forth in chapter 212. To the extent there remains any doubt in that regard, we have been instructed by the supreme court to strictly construe any purported statutory waiver of immunity in favor of retention of immunity. *See, e.g.*, *Chatha*, 381 S.W.3d at 513 (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003)).

9

A number of courts have previously stated that chapter 212 governs judicial review of employee-benefits claims. *See Critical Health Connection, Inc. v. Texas Workforce Comm'n*, 338 S.W.3d 758, 762 (Tex. App.—Austin 2011, no pet.) (observing that Texas Labor Code chapter 212 governs review of employee-benefits claims); *UL, Inc. v. Pruneda*, No. 01-09-00169-CV, 2010 WL 5060638, at *9 (Tex. App.—Houston [1st Dist.] Dec. 9, 2010, no pet.) (mem. op.) (stating that Texas Labor Code sections 212.201 and 212.206 pertain to judicial review of Commission decisions regarding unemployment benefits claims, not to decisions regarding unpaid wage claims); *Morrow v. Texas Emp't Comm'n*, 497 S.W.2d 635, 637 (Tex. Civ. App.—Dallas 1973, writ dism'd) (holding that section 212.201's predecessor statute related only to claims for unemployment benefits and did not purport to deal with disputes regarding liability for unemployment taxes)[2]; *see also Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998) (stating that standard of review for decisions regarding benefit payments is found in Labor Code section 212.202). Although these cases do not expressly so hold, they are consistent with and support our construction of section 212.201 as applying only to suits for judicial review of Commission decisions regarding unemployment benefits. Moreover, RMS has cited no case, nor have we found one, in which a court has concluded that section 212.201 waives the Commission's immunity from a suit for judicial review of a decision other than one regarding employee-benefits claims.

---

[2] The statute at issue in *Morrow* was Texas Revised Civil Statutes article 5221b-4. This statute was repealed by the Act of May 12, 1993, 73d Leg., ch. 269, § 5, 1993 Tex. Gen. Laws 987, 1273, as part of a nonsubstantive revision of statutes relating to labor and employment. The Legislature repealed article 5221b-4 when it enacted the Texas Labor Code as part of the state's statutory revision program, which contemplated "a topic-by-topic revision of the state's general and permanent statute law without substantive change." *Id.* § 1.001, 1993 Tex. Gen. Laws 987, 990.

Finally, the Texas Labor Code contains separate provisions that waive the Commission's immunity from suits for judicial review of unemployment-tax related disputes. *See* Tex. Lab. Code §§ 213.032 (waiving immunity from suit for judicial review of Commission's assessment of unemployment taxes); .073 (waiving immunity from suit for judicial review of Commission's denial of request for refund of unemployment taxes paid under protest). If RMS were correct that section 212.201 waives immunity for *any* Commission decision, these separate provisions would be unnecessary. The Legislature's inclusion of additional express waivers of immunity in chapter 213 indicates that the waiver in section 212.201 was not intended to grant a right to judicial review of all Commission decisions. If, as RMS maintains, section 212.201 grants a right to judicial review of all Commission decisions, the waivers in chapter 213 would be redundant. RMS's construction of the statute contradicts the supreme court's directive that we give effect to all words of a statute and, if possible, not treat any statutory language as mere surplusage. *See Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 401 (Tex. 2000); *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) (courts should not adopt construction that renders statutory provisions meaningless); *see also* Tex. Gov't Code § 311.021 (we presume that Legislature intended entire statute to be effective).

Having considered the Act as a whole, and mindful of the requirement that we strictly construe statutes waiving sovereign immunity, we hold that the waiver of immunity contained in Labor Code section 212.201 is limited to suits for judicial review of the Commission's decision regarding a claim for unemployment benefits. We overrule RMS's first appellate issue.

11

*Ultra Vires Claim*

In its second issue, RMS contends that the trial court erred by concluding it did not have jurisdiction over RMS's claims for declaratory and injunctive relief and granting the Commission's plea to the jurisdiction as to those claims. RMS contends that it has asserted statutory violations by state officials that fall within the *ultra vires* exception to sovereign immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). A cause of action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is an *ultra vires* claim that is not barred by sovereign immunity. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997). To fall within the *ultra vires* exception to immunity, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* RMS alleged that the Commissioners acted in violation of Texas Labor Code chapter 201 by determining that the individual caregivers were employees of the bank trusts and not of RMS. According to RMS, the Commissioners had no discretion to make this determination in the face of evidence establishing that RMS has the right to control, and actually does control, the caregivers' performance of their services.[3] RMS maintains that chapter 201 mandates that the Commissioners apply a "control test" to determine who employs the caregivers and that, by failing to do so, the Commissioners acted outside their legal or statutory authority. Resolution of this issue

---

[3] The Commission does not agree that the facts related to whether RMS controls or directs the individual caregivers' performance of their services are undisputed. However, as explained below, these facts are not relevant to the jurisdictional inquiry.

12

presents a question of statutory construction, which we review de novo. *Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d at 624.

To support its contention that the Labor Code mandates that the Commissioners employ a "control test" to determine the identity of a worker's employer, RMS relies on the following three sections of chapter 201:

- Section 201.011(11), which provides that, in the Act, the term "employing unit" means "a person who, after January 1, 1936, has employed an individual to perform services for the person in this state."

- Section 201.021, which defines "employer" as "an employing unit that: (1) paid wages of $1,500 or more during a calendar quarter in the current or preceding calendar year; or (2) employed at least one individual in employment for a portion of at least one day during 20 or more different calendar weeks of the current or preceding calendar year."

- Section 201.041, which provides that "'employment' means a service, including a service in interstate commerce, performed by an individual for wages or under an express or implied contract of hire, unless it is shown to the satisfaction of the commission that the individual's performance of the service has been and will continue to be free from control or direction under the contract and in fact."

Tex. Lab. Code §§ 201.011, .021, .041. RMS asserts, without citing authority, that these three definitions establish a statutory "control test" for discerning the identity of a particular employee's "employer" responsible for paying that employee's unemployment taxes. RMS reads section 201.041 to provide that the entity that controls or directs the individual's performance of services must be that individual's "employer."

But section 201.041 defines "employment," not "employer." Pursuant to section 201.041, if the individual's performance of services is free from control or direction, the services

13

he provides are not deemed to be "employment" under the Act and, consequently, there is no "employer" subject to the Act's requirement that unemployment taxes be paid for that individual. *See id.* § 201.021 ("employer" means an "employing unit" that "employed at least one individual *in employment*" for specified period of time (emphasis added)). The individual performing those services would be an independent contractor, and the person to whom the services were provided would have no obligation to pay unemployment taxes for that individual. *See Critical Health Connection, Inc.*, 338 S.W.3d at 761 ("Under the Act, an 'employer' is obligated to contribute to the unemployment compensation fund 'on wages for employment paid,' in accordance with rules adopted by the Commission.").[4]

Thus, the "control test" is a tool for discerning whether the activity engaged in by an individual qualifies as "employment" under the Act or whether the individual is, instead, an independent contractor. It does not necessarily control the decision of which entity is the "employer" of a particular individual. Although certainly a relevant factor, nothing in the statute mandates that, in every case, the entity exercising control over the services performed is the "employer" under the

---

[4] In *Critical Health Connection* we noted that, "pursuant to the legislative directive in section 201.041, the Commission has developed a multi-factor 'right-to-control' test *for determining whether an individual is in an 'employment' relationship* or is instead an independent contractor." *Critical Health Connection, Inc. v. Texas Workforce Comm'n*, 338 S.W.3d 758, 761-62 (Tex. App.—Austin 2011, no pet.) (citing 40 Tex. Admin. Code §§ 815.134 (Tex. Workforce Comm'n, Employment Status: Employee or Independent Contractor), 821.5 (Tex. Workforce Comm'n, Employment Status: Employee or Independent Contractor) (promulgating Commission's 20-factor guideline for determining employment status) (emphasis added)). The Commission's test is similar to the common-law test articulated by the Texas Supreme Court in *Limestone Products Distribution, Inc. v. McNamara*. 71 S.W.3d 308, 312 (Tex. 2002) ("The test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operation of the work.").

14

Act. Thus, we cannot conclude that the Commissioners acted outside their statutory authority by considering factors other than those included in the "control test" when determining who employs the individual caregivers.

In its decision, the Commission stated that both the Commission and RMS agreed that the workers in question were employees, not independent contractors. The only question before the Commission was who employed them. The Commission concluded, in part:

> [T]he banks/trustees are the entities that best meet the criteria to be the employer of the workers assigned to each entity. The services performed by the employees directly benefit the individual trusts. Each individual trust has its own separate legal status. Each acts as the employer of the workers involved. RMS is nothing more than the designated agent of each individual trust. While the wages and payroll processing are done by RMS, each trust, by contract, reimburses RMS for these services. Thus, in reality, the individual trusts are paying the employees' wages.

The Commission is authorized by statute to consider not just who had control or direction over the employees, but also who benefitted from their services and who actually paid their wages. *See* Tex. Lab. Code §§ 201.011(11) ("employing unit" means person who has employed individual to perform services "*for the person*"), .021 ("employer" means employing unit that paid wages).[5]

---

[5] We note that the Commission also notified RMS of two ways a party found by the Commission to be an "employer" could obtain judicial review of that decision. The party may pay contributions resulting from the finding that it is an "employer" and then apply for a refund. If the Commission denies the refund, the party may sue the agency in a Travis County court. *See* Tex. Lab. Code § 213.073 (permitting suit against Commission for review of Commission's refusal to allow adjustment or refund of unemployment contributions). In the alternative, if the party fails to pay contributions, the Commission may make an administrative assessment to collect unpaid unemployment contributions, plus penalties. The party may then file a suit for judicial review of the assessment in Travis County district court. *See id.* § 213.032(c) (judicial review of administrative assessment to collect unpaid unemployment contributions). The bank trusts are not without an avenue for challenging the Commission's decision that they, not RMS, employ the individual caregivers.

15

The Labor Code does not require that the Commissioners use only the "control test" to determine whether RMS or the bank trusts employ the individual caregivers. No statute or regulation prohibits them from considering other factors. Therefore, RMS has failed to allege an *ultra vires* claim. *See Heinrich*, 284 S.W.3d at 372. RMS's pleadings thus do not affirmatively demonstrate the trial court's jurisdiction over the claims for declaratory and injunctive relief, but they also do not affirmatively demonstrate incurable defects in jurisdiction. The issue, then, "is one of pleading sufficiency and the plaintiff [] should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226-27. The trial court properly granted the Commission's plea to the jurisdiction as to RMS's *ultra vires* claims, but we reverse the judgment dismissing those claims and remand with instructions that the trial court provide RMS a reasonable opportunity to amend its pleadings. The trial court will have jurisdiction over RMS's *ultra vires* claims only if RMS can identify a statute the Commissioners violated by determining that the bank trusts were the individual caregivers' employers or that the Commissioners acted without legal authority.

**CONCLUSION**

For the reasons stated in this opinion, we affirm the trial court's order granting the Commission's plea to the jurisdiction as to RMS's suit for judicial review and dismissing it. We reverse the trial court's order granting the plea to the jurisdiction as to RMS's *ultra vires* claims and dismissing its claims for declaratory and injunctive relief, and remand the case to the trial court in order to provide RMS an opportunity to amend its pleadings.

16

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed in Part; Reversed and Remanded in Part

Filed:   May 22, 2015