# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REHEARING

## NO. 03-18-00123-CV

**Houston Independent School District, Appellant**

**v.**

**Texas Workforce Commission, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-16-000534, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## <u>OPINION</u>

We withdraw our opinion and judgment dated April 25, 2019, and substitute the following opinion and judgment in their place.

The Houston Independent School District (Houston ISD) sued the Texas Workforce Commission to recover allegedly overpaid unemployment taxes. *See* Tex. Lab. Code §§ 213.071–.074. Both parties moved for summary judgment. After a hearing on the controlling question of law and the undisputed facts, the district court rendered final judgment granting the Workforce Commission's motion, denying Houston ISD's motion, and ordering each party to bear its own costs. Houston ISD now appeals from that judgment. We will affirm.

**BACKGROUND**

In 2011, the Commissioner of Education revoked the accreditation of North Forest Independent School District (North Forest), a school district near Houston. After North Forest's unsuccessful appeal of that revocation, the Commissioner ordered Houston ISD to annex North Forest's territory and to assume its assets and debts. *See* Tex. Educ. Code § 13.054(a) ("The commissioner by order may annex to one or more adjoining districts a school district that has been rated as academically unacceptable for a period of two years."). The Workforce Commission subsequently billed Houston ISD for unemployment benefits paid to former North Forest employees. Houston ISD refused to remit payment, arguing: (1) it is not responsible for any sums due under governing law, and (2) to the extent it might be responsible, the county commissioners must make that determination. *See* Tex. Educ. Code § 13.004(a).

When Houston ISD learned it could not appeal the determination without first paying the allegedly overdue sum, it remitted nearly $4 million in benefits and interest and then filed suit for judicial review in district court. *See* Tex. Lab. Code §§ 213.071–.074 (setting forth procedures by which employer may "bring an action in a court of competent jurisdiction in Travis County against the commission for review of the commission's refusal to allow an adjustment or a refund"). Both parties moved for summary judgment on an undisputed record. The Workforce Commission argued that Texas law renders Houston ISD a "successor employer" responsible for any benefits distributed to North Forest's former employees. *See id.* § 204.086 (rendering employer acquiring "substantially all of the assets of an organization" "liable to the commission for prompt payment of the contribution, penalty, or interest," if at acquisition the acquired employer was indebted to

2

Workforce Commission). Houston ISD disagreed with that construction, arguing that North Forest was not "indebted" at the time of annexation and, regardless, that the county commissioners must approve Houston ISD's assumption of any debt. *See* Tex. Educ. Code § 13.004(a). The district court granted the Workforce Commission's motion, denied Houston ISD's motion, and rendered final judgment in the Workforce Commission's favor. Houston ISD's motion for new trial was denied by operation of law. Houston ISD perfected timely appeal from the final judgment.

## STANDARD OF REVIEW

Summary judgment is proper when the evidence before the district court shows there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When both parties move for summary judgment on overlapping issues, we undertake de novo review of all evidence and issues presented, and, if the trial court erred, render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *see also* Tex. R. App. P. 43.2(c).

## DISCUSSION

The parties ask this Court to resolve a single question of law: whether, under relevant provisions of the Labor Code, an annexing school district must reimburse the State for unemployment benefits distributed to former employees of the annexed district after annexation is ordered pursuant to Chapter 13 of the Education Code. *See* Tex. Educ. Code § 13.054(a). "We review questions of statutory construction de novo, and our primary objective is to give effect to the Legislature's intent as expressed in the language of the statute." *Risk Mgmt. Strategies, Inc. v. Texas*

3

*Workforce Comm'n*, 464 S.W.3d 864, 868 (Tex. App.—Austin 2015, pet. dism'd) (citing *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011); *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008)). "We discern legislative intent from the statute as a whole, not from isolated portions." *Id.* (citing *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008)). "Absent an absurd result, we rely on the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context." *Risk Mgmt. Strategies*, 464 S.W.3d at 868 (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)).

The Texas Unemployment Compensation Act provides short-term financial relief for individuals who become unemployed through no fault of their own. *See Keen v. Texas Unemployment Comp. Comm'n*, 148 S.W.2d 211, 212 (Tex. App.—Galveston 1941, no writ). The program is funded in part through taxes levied on employers. *Lally v. State*, 138 S.W.2d 1111, 1112 (Tex. App.—Austin 1940, no writ). By default, a covered employer must remit a contribution calculated as a function of its total payroll, the benefits provided to its former employees in the previous calendar year, and other factors not relevant here. *See* Tex. Lab. Code § 204.103(a)–(b). In the alternative, Chapter 205 of the Labor Code allows governmental employers to elect "to pay reimbursements for benefits instead of contributions." *See id.* § 205.001. These "reimbursing employers" must make a payment of 100% of the regular and extended benefits actually paid to former employees during that quarter. *See id.* § 205.013(a)–(c). In this case, Houston ISD and North Forest each elected classification as reimbursing employers for the pertinent time periods.

4

The parties disagree over the proper application of Labor Code Section 204.086 to the facts of this case.  The Section governs the collection of taxes from "successor employers" and provides:

> An individual or employing unit that acquires the organization, trade, or business or substantially all of the assets of an organization, trade, or business of an employer who, at the time of the acquisition is indebted to the commission for a contribution, a penalty, or interest, is liable to the commission for prompt payment of the contribution, penalty, or interest.

*Id.* § 204.086(a).  Although the Section only refers to contributions, it applies to both contributing employers and to reimbursing employers.  *See id.* § 205.011 (listing provisions of Chapter 204 inapplicable to employers electing reimbursement under Chapter 205 and providing that reimbursing employer is subject to all other obligations).  The parties do not dispute that Houston ISD acquired substantially all of North Forest's assets.

Houston ISD contends Section 204.086(a) imposes no liability for any unemployment taxes arising from benefits paid to the former employees because North Forest was not "indebted" for those sums at the time of annexation.  Chapter 204 does not define "debt" or "indebtedness," so we look to common usage and prior interpretation to inform our analysis.  *See* Tex. Gov't Code § 311.011(a) (common usage), (b) (technical, particular, or legislative meaning).  Black defines indebtedness as "the quality, state, or condition of owing money" and "something owed; a debt." *Indebtedness*, *Black's Law Dictionary* (10th ed. 2014).  A debt, in turn, is defined as an obligation owed to another.  *See The Compact Oxford English Dictionary* 395 (2d ed. 1994) ("anything which one person is under obligation to pay or render another"); *Merriam Webster Collegiate Dictionary*

5

297 (10th ed. 1993) ("something owed: an obligation"). This definition is consistent with our high court's understanding of the term. *See Reconstruction Fin. Corp. v. Gossett*, 111 S.W.2d 1066, 1073 (Tex. 1938) ("'[W]hile ordinarily it imports a sum of money arising upon a contract, express or implied, in its more general sense it means that which one person is bound to pay to or perform for another.'" (expounding on Webster's definition of debt as "obligation [or] liability" and quoting *Barber v. City of East Dallas*, 18 S.W. 438, 439 (Tex. 1892))).

This Court has already explained that a contributing employer's obligation to contribute to the State's unemployment fund arises when wages are due—not when unemployment taxes are due. *See generally Wilburn v. State*, 824 S.W.2d 755 (Tex. App.—Austin 1992, no writ).[1] In *Wilburn*, the State sued to recover certain unemployment taxes, leading a corporate officer to dispute, among other things, when the corporation's obligation to remit the taxes had arisen. *Id.* at 763–64. We summarized the parties' competing understandings of the obligation:

> Appellant argues that the taxes are created or incurred and become due on each day a person is employed . . . . This approach ignores the clear language of [the contribution provision of the Unemployment Compensation Act], which bases liability for contributions on wages actually paid . . . . [T]he State argues that while

---

[1] While the *Wiburn* opinion interpreted a predecessor to the current provision mandating employer contributions, *see Wilburn v. State*, 824 S.W.2d 755, 764 (Tex. App.—Austin 1992, no writ), we see no substantive difference that would impact the date an employer's obligation arises. *Compare* Tex. Rev. Civ. Stat. art. 5221b-5(a) (1987) ("Contributions shall accrue and become payable by each employer for each calendar year, or portion thereof . . . with respect to wages for employment paid during such calendar year or portion thereof . . . ."), *with* Tex. Lab. Code § 204.002 ("An employer shall pay a contribution on wages for employment paid during a calendar year or the portion of the calendar year in which the employer is subject to this subtitle."). Although Houston ISD might argue that a reimbursing employer's obligation does not arise until an employee becomes eligible for benefits, the Legislature has not made that distinction in Chapter 204 or 205 of the Labor Code.

the debt is created when wages are paid, it is incurred when contributions are due. The State essentially is arguing that the debt is created by one event, but incurred by another.

*Id.* at 764 (internal citations omitted). We went on to hold that the obligation to contribute to the unemployment compensation fund is "created and incurred" when wages are due. *Id.* Here, North Forest elected quarterly reimbursement under Chapter 205 rather than the pre-payment option under Chapter 204, but that election does not change the date its obligation arose. *Compare* Tex. Lab. Code § 204.101 ("A governmental employer shall pay a contribution . . . ***on wages paid*** . . . ." (emphasis added)), *with id.* § 205.011(a) ("A reimbursing employer is . . . subject to the duties and responsibilities of all provisions of this subtitle [i.e., including Section 204.101]."). Thus, at annexation North Forest was already indebted to the Workforce Commission for any unemployment benefits its employees would eventually receive.

Houston ISD argues that Section 204.086(a) should not apply because it did not hire the North Forest employees who received unemployment benefits, and—unlike in the private sector—this was not a voluntary acquisition of one employer by another. But an "employer" includes "an individual or employing unit that acquires or otherwise receives, ***through any means***, all or part of the organization, trade, business, or workforce of another that was an employer subject to this subtitle at the time of acquisition." *Id.* § 201.022 (emphasis added). The Unemployment Compensation Act applies to nearly all employers, including non-profit organizations and governmental entities. *See, e.g.*, *id.* §§ 201.021 (general definition of employer), .023 (tax exempt non-profit organizations), .026 (political subdivisions). Accordingly, and in light of the expansive nature of the phrase "through any means," we can only conclude the Legislature intended to include

acquisitions outside the private sector—including annexations like the one at issue here—in those covered by Section 204.086. We reject Houston ISD's interpretation of the Section.

We also find unpersuasive Houston ISD's argument that Section 13.004 of the Education Code precludes the Workforce Commission from recovering the disputed reimbursement without first seeking the approval of the county commissioners. Section 13.004 provides:

> If under this chapter a school district assumes a portion of the indebtedness of another district, the commissioners court by order shall equitably allocate the indebtedness among the districts involved. . . . If districts located in more than one county are involved, the commissioners court of each county in which an involved school district is located must agree on the allocation of indebtedness and personal property.

Tex. Educ. Code § 13.004(a). But this is not a case involving a school district assuming "a portion of" the indebtedness of another district. Nor does this case involve multiple receiving districts such that the commissioners would determine the proper allocation of the debt. Instead, the Section's only relevance is its provision of various means by which the receiving school district or its board might generate the funds necessary to cover the assumed indebtedness. *See id.* § 13.004(d)–(f). Other statutory sections offer additional sources of funding for receiving districts that suffer financial hardships from annexation ordered under Chapter 13. *See, e.g.*, *id.* § 13.054(f)–(g) (allowing Commissioner of Education to adjust "local fund assignment" and provide "additional state aid" for five years following annexation). Thus, Chapter 13 as a whole only confirms that the Legislature anticipated and intended the transfer of outstanding financial obligations from the annexed school district to the receiving district or districts.

As ostensible support for its proposed construction of Chapter 13, Houston ISD cites to the Commissioner's unpublished *Abdullah* decision, which it characterizes as holding that "neither Chapter 13 nor [the] common law provides for [an] annexing school district to assume contractual or legal *obligations* of the annexed district." *See* Tex. Comm'r of Educ*., Abdullah v. La Marque Indep. Sch. Dist.*, Docket No. 058-R1-07-2016 (Oct. 11, 2016) (order on motion for rehearing) (citing *Barnhart Indep. Sch. Dist. v. Mertzon Indep. Sch. Dist*., 464 S.W.2d 197, 201 (Tex. App.—Austin 1971, writ ref'd n.r.e.); *Rocky Mt. Indep. Sch. Dist. v. Jackson*, 152 S.W.2d 400, 403 (Tex. App.—Texarkana 1941, writ ref'd)). Yet *Abdullah* stands for the proposition that "the Texas Education Code does not require a district to which the Commissioner annexes the territory of a former school district to assume the term contract obligations [i.e., employment contracts] of the former district." *See id.* at 2. Here, the Workforce Commission is not asking Houston ISD to honor North Forest's employment contracts; it is requiring Houston ISD to assume North Forest's outstanding financial obligation to the State—an obligation that already existed at the time of annexation—pursuant to Section 204.086 of the Labor Code. *Abdullah* is therefore inapposite.

Nor are we persuaded by Houston ISD's argument that Chapter 13 of the Education Code limits an annexing district's assumption of debt to what Houston ISD refers to as "bonded indebtedness." Chapter 13 makes only one reference to bonds, allowing an annexing district to "issue refunding bonds for bonds of another district assumed under this chapter." *See* Tex. Educ. Code § 13.004(e). In other words, a receiving district's governing body may issue new bonds to retire the bonded debt previously undertaken by the annexed school district. *See* Tex. Gov't Code §§ 1206.001–.008 (authorizing issuance of refunding bonds by "political and governmental

9

entit[ies]" and establishing procedures governing such issuance). But Chapter 13 includes no language indicating that a receiving district may **only** assume bonded debt, and Houston ISD offers no other authority for the proposition.

Finally, Houston ISD argues that it is "unjust" and "unreasonable" to ask the taxpayers of Houston ISD, which now include North Forest's former tax base, to reimburse the Workforce Commission for unemployment benefits distributed to North Forest's former employees following the annexation. However, "[a] court is not authorized, under any pretext, to modify, repeal, or rewrite a statute or even to construe an unambiguous act to conform to its own notions of justice, policy, propriety, or wisdom." *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 562 (Tex. App.—Tyler 2007, pet. denied) (citing 67 Tex. Jur. 3d Statutes § 85 (2003)). Instead, policy arguments like the one raised by Houston ISD are best reserved for the Legislature. *See Morath v. Texas Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 886 (Tex. 2016) (declining to "supplant[] lawmakers' policy wisdom"). Thus, because the Workforce Commission has shown that Labor Code Section 204.086 requires Houston ISD to reimburse the State for unemployment benefits distributed to former employees of North Forest, we agree with the district court that the Workforce Commission is entitled to judgment as a matter of law. Tex. R. Civ. P 166a; *Dorsett*, 164 S.W.3d at 661; *Risk Mgmt. Strategies*, 464 S.W.3d at 868.

## CONCLUSION

Because the district court did not err in granting the Workforce Commission's motion for summary judgment and denying Houston ISD's competing motion, we affirm its final judgment.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed on Rehearing

Filed:   April 26, 2019