Dr. Behzad NAZARI, D.D.S. d/b/a Antoine Dental Center; Dr. Behzad Nazari; Harlingen Family Dentistry, P.C. a/k/a Practical Business Solutions, Series LLC; Juan D. Villarreal D.D.S., Series PLLC d/b/a Harlingen Family Dentistry Group; Dr. Juan Villareal; Dr. Vivian Teegardin; Richard F. Herrscher, D.D.S., M.S.D., P.C.; Dr. Richard F. Herrscher; M & M Orthodontics, PA; Dr. Scott Malone; Dr. Diana Malone; Michelle Smith; National Orthodontix, MGMT, PLLC; Dr. John Vondrak; RGV Smiles By Rocky Salinas, D.D.S. PA; and Dr. Rocky Salinas, Appellants

v.

The STATE of Texas; Xerox Corporation; and Xerox State HealthCare, LLC, f/k/a ACS State HealthCare, LLC, Appellees [1]

NO. 03–15–00252–CV

Court of Appeals of Texas, Austin.

Filed: June 17, 2016

1. For ease of reading, we will refer to all of the appellants as the "Dental Groups" and to Xerox Corporation and Xerox State Health- Care, LLC, f/k/a ACS State HealthCare, LLC as "Xerox."

Jason D. Ray, Riggs & Ray, P.C., Austin, TX, Hart Green, Weller, Green, Toups & Terrell, L.L.P., Beaumont, TX, for appellants.

Constance H. Pfeiffer, Christopher Cowan, Eric J.R. Nichols, Gretchen S.

Sween, Beck Redden LLP, Houston, TX, Reynolds B. Brissenden, Raymond C. Winter, Assistant Attorney General, Austin, TX, John Campbell Barker, Phillip Andrew Lionberger, Office of the Attorney General, Austin, TX, C. Andrew Weber, Kelly, Hart & Hallman, L.L.P., Austin, TX, for appellees.

Before Justices Puryear, Goodwin, and Bourland

## ON MOTION FOR REHEARING

### *OPINION*

David Puryear, Justice

Our opinion and judgment issued on February 26, 2016, are withdrawn, and the following opinion is substituted. The Dental Groups' motion for rehearing is denied.

The State initiated an enforcement action against the Dental Groups under the Texas Medicaid Fraud Prevention Act alleging that the Dental Groups engaged in various unlawful acts and seeking to impose civil penalties. In response, the Dental Groups filed counterclaims against the State and also filed third-party claims against Xerox. Subsequent to the Dental Groups filing their counterclaims and third-party claims, the State filed a plea to the jurisdiction asserting that the Dental Groups' counterclaims against the State were barred by sovereign immunity. In addition, the State filed a motion to dismiss the Dental Groups' third-party claims against Xerox. After considering the State's requests along with the Dental Groups' responses, the district court granted the State's plea and the State's motion to dismiss. Shortly after the district court made its rulings, the Dental Groups filed an interlocutory appeal challenging both rulings. Further, although Xerox is an appellee in this case, it also filed appellate briefing challenging the district court's de-

cision to dismiss the claims against Xerox. We will affirm the portion of the district court's order dismissing the Dental Groups' counterclaims against the State, and we will dismiss for want of jurisdiction the Dental Groups' issue urging that the district court should not have dismissed their third-party claims against Xerox.

## GOVERNING LAW

Before delving into the facts underlying this case, we provide a brief overview of the relevant statutes and regulations pertaining to this appeal. This appeal stems from orthodontic services that were provided to Texas citizens and paid for by Texas Medicaid. *See* Tex. Hum. Res.Code § 32.001 (explaining that purpose of Medicaid is to "enable the state to provide medical assistance on behalf of needy individuals and to enable the state to obtain all benefits for those persons authorized" by federal law); *see also Hawkins v. Dallas Cty. Hosp. Dist.*, 150 S.W.3d 535, 536 (Tex. App.–Austin 2004, no pet.) (stating that "Medicaid is a federal-state assistance program, run by state governments within federal guidelines, that pays for health care services provided to eligible recipients—low-income people of any age—from federal, state, and local tax funds" (citing 42 U.S.C. §§ 1396–1396v)). In general, "[o]rthodontic services for cosmetic reasons only are not a covered Medicaid service," but Medicaid can be used for the "treatment of severe handicapping malocclusion and other related conditions as described and measured by the" Texas Medicaid Provider Procedures Manual. 25 Tex. Admin. Code § 33.71(a) (2015) (Tex. Dep't of State Health Servs., Orthodontic Servs. and Prior Authorization); *see also id.* § 33.2(8) (2015) (Tex. Dep't of State Health Servs., Definitions) (describing what services are medically necessary and explaining that services are not medically

necessary if, among other reasons, they are "primarily for the convenience of the client or provider"); 2003 Texas Medicaid Provider Procedures Manual ("Provider Manual"), § 18.20.3, http://www.tmhp.com/TMHP_File_Library/Provider_Manuals/TMPPM/Archives%20(TMPPM%202003,%202004)/2003_TMPPM.pdf (outlining permissible orthodontic services, including "[c]orrection of severe handicapping malocclusion," "[c]rossbite therapy," "[h]ead injury involving severe traumatic deviation," and "[o]rthognathic surgery" needed for application of braces). In order for Medicaid to cover the limited types of treatment listed above, the orthodontic treatment "must be prior authorized." 25 Tex. Admin. Code § 33.71(a); *see also* Provider Manual § 18.9 (stating that "[m]andatory prior authorization is required for consideration of reimbursement" for orthodontic services). When seeking prior authorization, providers must submit documentation demonstrating the need for the treatment as well as a treatment plan. Provider Manual § 18.20.1.

Moreover, the Provider Manual in effect during the relevant time specified that "[p]roviders are **responsible** for obtaining authorization for a complete orthodontic treatment plan." *Id.* In addition, the Provider Manual explained that when submitting a claim for reimbursement, "the provider certifies" that, among other things, "[t]he information on the claim form is true, accurate, and complete" and that the treatment is medically necessary. *Id.* § 2.2.7; *see also id.* § 2.3 (requiring provider to maintain "a current understanding of the requirements for participation in the Texas Medicaid Program"). Furthermore, the Provider Manual warned that providers who submit "a false statement or misrepresentation, or omit[ ] pertinent facts" in order to "obtain greater compensation"

or "to meet prior authorization requirements" are "subject to review, fraud referral, and/or administrative sanctions." *Id.* § 2.3.

To ensure compliance with the various Medicaid requirements and to prevent the improper depletion of Medicaid funds, several enforcement mechanisms have been created. *See, e.g.,* Tex. Penal Code § 35A.02 (criminalizing, among other activities, making false statement or misrepresentation to receive benefit from Medicaid program); 1 Tex. Admin. Code §§ 371.1601–.1719 (2015) (Tex. Health & Human Servs. Comm'n, Medicaid & Other Health & Human Servs. Fraud & Abuse Program Integrity) (authorizing Office of Inspector General of Health and Human Services Commission to bring administrative enforcement proceeding against service providers). The enforcement mechanisms at issue in this case are found in the Texas Medicaid Fraud Prevention Act (the "Act"). *See* Tex. Hum. Res.Code §§ 36.001–.132.[2] The Act prohibits certain "Unlawful Acts," *id.* § 36.002, and authorizes the State to collect a civil penalty from an individual who has violated the Act, *id.* §§ 36.007, .052. In particular, the Act states that "a person who commits an unlawful act is liable to the state for" "the amount of any payment ... provided under the Medicaid program ... as a result of the unlawful act" along with "interest on the amount of the payment" as well as "a civil penalty of ... two times the amount of the payment." *See id.* § 36.052(a)(1), (2), (4). The Act also allows for the imposition of additional civil penalties in certain circumstances, *id.* § 36.052(a)(3), as well as "fees, expenses, and costs reasonably incurred ... including court costs, reasonable attorney's fees, witness fees, and deposition fees," *id.* § 36.007.

---

**2.** Unless otherwise necessary, we will refer to the current version of the Act.

## BACKGROUND

The attorney general, acting on behalf of the State, initiated an enforcement action under the Act against the Dental Groups who provided services to Medicaid patients over an extended period of time.[3] In its petition, the State alleged that the Dental Groups "submitted or caused to be submitted false statements, information or misrepresentations of material facts, or omitted pertinent facts to Texas Medicaid to obtain Medicaid prior authorization and payment for orthodontic services and appliances." In particular, the State asserted that the Dental Groups misrepresented "the severity of the patients' dental conditions, filed claims based on those [misrepresentations], and [were] paid by Texas Medicaid for services for which the patients were not qualified to receive"; that the Dental Groups "submitted or caused to be submitted claims for payment to Texas Medicaid for products and services that were never provided to Texas Medicaid recipients"; that the Dental Groups "submitted or caused to be submitted claims for payment to Texas Medicaid for products and services that were more costly than the products and services actually provided"; that the Dental Groups "engaged in an unlawful 'kickback' scheme involving the referral of Texas Medicaid patients to a third party/parties for the provision of oral and maxillofacial surgery services"; that the Dental Groups misrepresented "that patients had a 'crossbite' in order to obtain prior authorization, filed claims based on those false diagnoses, and were paid by Texas Medicaid for services for which the patients were not qualified"; and that the Dental Groups misrepresented "that proper, licensed employees" performed the orthodontic measures and made diagnoses, "which permitted them to receive Medicaid payments they should not have received." In light of those allegations, the State sought to recover the amount of the allegedly improper Medicaid payments made to the Dental Groups, prejudgment interest on those payments, "two times the amount or the value of such payments," additional civil penalties for specific violations, as well as the costs, attorney's fees, and expenses that the State incurred in seeking relief under the Act.

In response to the State's enforcement action, the Dental Groups filed counterclaims against the State as well as third-party claims against Xerox. During the time relevant to this appeal, the State entered into a contract with Xerox under which Xerox had the responsibility to, among other duties, review the prior-authorization requests submitted by providers seeking to perform and to be reimbursed for orthodontic services.[4] In their

---

**3.** Before initiating this enforcement action, the Health and Human Services Commission pursued administrative remedies against some of the Dental Groups, *see* Tex. Gov't Code § 531.102, and this Court previously reviewed the propriety of some of those remedies, *see Harlingen Family Dentistry, P.C. v. Health & Human Servs. Comm'n*, 452 S.W.3d 479, 481, 488 (Tex.App.–Austin 2014, pet. dism'd) (invalidating agency rule allowing Commission to retain funds that were accumulated during payment hold even after payment hold had been terminated and allowing Commission to use those funds as offset); *Janek v. Harlingen Family Dentistry, P.C.*, 451

S.W.3d 97, 99 (Tex.App.–Austin 2014, no pet.) (affirming trial court's order directing Commissioner to release funds held under payment hold). Those administrative remedies and the issues from the prior cases do not bear on the issues in the current appeal.

**4.** The State has filed its own enforcement action against Xerox contending that Xerox made various misrepresentations regarding its prior-authorization-review process while acting as the State's fiscal intermediary for the Medicaid program. *See* No. D–1–GV–14–000581, *State v. Xerox Corp.* (Travis Cty. 53rd

counterclaims, the Dental Groups alleged that "[t]he State conspired with [Xerox] to induce the [Dental Groups] into a reasonable belief that the statements, information and representations of material fact [the Dental Groups] made to Texas Medicaid to obtain prior authorizations and payment for orthodontic services and appliances were, in fact, true and correct." In addition, the Dental Groups asserted that "[t]he State conspired with Xerox to allow Xerox to violate its various contractual duties," that the State "breached the terms of the contract [with Xerox] by failing to supervise Xerox," and that the State committed conversion by withholding money from the Dental Groups for "services for which [they] should be paid."

Regarding their third-party claims against Xerox, the Dental Groups alleged that Xerox committed fraud by making false representations to the Dental Groups when it issued the "prior authorization approvals" that the Dental Groups relied on. In addition, the Dental Groups argued that Xerox breached its contract with the State by failing to thoroughly review the prior-authorization requests and that this breach injured the Dental Groups, who were third-party beneficiaries to the contract. Further, the Dental Groups alleged that Xerox's actions "constitute[d] promissory estoppel" because the Dental Groups "reasonably, substantially, and foreseeably relied on Xerox's promises" that the prior authorizations were proper. Moreover, the Dental Groups urged that Xerox's "actions constitute[d] negligent hiring and/or negligent supervision" because Xerox was required to but did not hire "a licensed dentist to render a diagnosis regarding medical necessity." The Dental Groups also asserted that Xerox's failure to hire qualified staff to review the prior-authorization requests was negligent and grossly

negligent and that Xerox made negligent misrepresentations to the Dental Groups by representing "that Xerox's prior authorization approvals were dispositive of medical necessity" even though "Xerox knew or should have known that its representations were false." Finally, the Dental Groups made a "[c]laim for contribution from Xerox" in the event that the district court awards "damages that represent any ... recovery by the State against" the Dental Groups.

Subsequent to the Dental Groups filing their counterclaims as well as their third-party claims against Xerox, the State filed a joint plea to the jurisdiction and motion to dismiss the third-party claims. Specifically, the State argued that the Dental Groups' counterclaims against the State are barred by sovereign immunity. In addition, the State urged that the Dental Groups' third-party claims should be dismissed because the Act "does not authorize a defendant to bring a third party claim" or because the claims "have no basis in law or fact." Alternatively, the State alleged that even if the Act permitted third-party claims, the Dental Groups' third-party claims against Xerox are "still barred by sovereign immunity."

After considering the State's joint plea to the jurisdiction and motion to dismiss as well as the Dental Groups' responsive filings, the district court issued an order granting the State's plea and motion to dismiss. In particular, the district court dismissed with prejudice the Dental Groups' counterclaims against the State because those counterclaims are barred by sovereign immunity and dismissed the Dental Groups' third-party claims against Xerox because the Act does not authorize third-party claims. In its order, the district court explained that "the State is

Jud. Dist. Ct.). That proceeding is not part of this appeal.

entitled to bring this action against defendants to the exclusion of other parties."

The Dental Groups appeal the district court's order and argue in two issues that the district court erred by dismissing their counterclaims and their third-party claims.

## DISCUSSION

### Dismissal of the Dental Groups' Counterclaims

In their first issue on appeal, the Dental Groups contend that the district court erred by granting the State's plea to the jurisdiction and by dismissing their counterclaims against the State because those counterclaims are not barred by sovereign immunity.

■ "Absent legislative waiver, sovereign immunity deprives Texas courts of subject-matter jurisdiction over any suit against" the State. *Risk Mgmt. Strategies, Inc. v. Texas Workforce Comm'n*, 464 S.W.3d 864, 868 (Tex.App.–Austin 2015, pet. dism'd); *see University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010) (per curiam) (stating that "[i]n general, the State of Texas retains sovereign immunity from suit"). "The Legislature may consent to suits against [it] by statute or by resolution." *Risk Mgmt. Strategies*, 464 S.W.3d at 868. Sovereign immunity is properly asserted in a plea to the jurisdiction because it deprives a court of subject-matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex.2004). Determining "[w]hether a court has subject-matter jurisdiction is a question of law, which we review de novo, when disputed facts relevant to the jurisdictional inquiry are not presented." *Risk Mgmt. Strategies*, 464 S.W.3d at 868.

■ When resolving the jurisdictional inquiry in this case, we have to construe various provisions of the Act. Statutory construction is a question of law that we review de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex.2011). When performing that task, "the primary objective is to give effect to the Legislature's intent as expressed in the statute's language." *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex.2009). In addition, legislative intent is determined from the statute as a whole and not from isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex.2008). "In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code § 311.034. In other words, "[sovereign] immunity remains intact unless surrendered in express and unequivocal terms by the statute's clear and unambiguous waiver." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex.2012).

■ Nothing in the provisions of the Act can be construed as a waiver of immunity for the claims at issue in this case. In fact, the only provision of the Act seeming to authorize a recovery against the State is found in section 36.112. *See* Tex. Hum. Res.Code § 36.112. That section is located in the subchapter authorizing private parties to file "a civil action . . . for the person and for the state. The action shall be brought in the name of the person and of the state." *Id.* § 36.101; *see id.* §§ 36.101–.117. In section 36.112, the legislature explained that the provisions of the Civil Practice and Remedies Code allowing parties to recover fees, expenses, and attorney's fees against a state agency for frivolous claims, *see* Tex. Civ. Prac. & Rem.Code §§ 105.001–.004, apply to Medicaid fraud-prevention claims filed by private parties on behalf of the State, Tex.

Hum. Res.Code § 36.112.[5] Moreover, another section in that subchapter explains that "[e]xcept as provided by Section 36.112, this subchapter does not waive sovereign immunity." *Id.* § 36.116. In other words, that provision explains that the filing of an enforcement action by a private party does not waive the State's sovereign immunity except for recovery against the State for frivolous claims. *Id.* We do not agree with the Dental Groups' assertion that this provision demonstrates that the legislature intended to waive sovereign immunity for enforcement actions that are filed by the State rather than private parties because nothing in the remainder of the Act clearly indicates that the legislature intended to waive sovereign immunity when the State files enforcement actions under the Act.

When arguing that the district court erred by granting the Dental Groups' plea to the jurisdiction, the Dental Groups argue that by initiating this enforcement action against the Dental Groups and by "seeking monetary relief," the State waived its sovereign immunity. Stated differently, the Dental Groups contend that "[b]ecause the State initiated this action against the Dental Group[s] in the form of affirmative claims for monetary relief, it should be indisputable that the State has waived its immunity from the Dental Groups' counterclaims that relate to the subject matter of this lawsuit." Moreover, the Dental Groups contend that their counterclaims are compulsory counterclaims. *See* Tex.R. Civ. P. 97(a) (requiring pleading to assert counterclaim, "which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim").

■■■■■ When making these assertions, the Dental Groups primarily rely on *Reata Construction Corporation v. City of Dallas,* 197 S.W.3d 371 (Tex.2006).[6] In *Reata,*

---

**5.** It is worth noting that the Human Resources Code specifies that "[a] person other than the state may not intervene or bring a related action based on the facts underlying a pending action brought under this subchapter" regarding actions brought by private parties. Tex. Hum. Res.Code § 36.106.

**6.** In their briefs, the Dental Groups also refer to a prior decision by the commission of appeals that was adopted by the supreme court. *See Anderson, Clayton & Co. v. State ex rel. Allred,* 122 Tex. 530, 62 S.W.2d 107 (1933). In *Anderson,* the State and various officials sought a temporary injunction against Anderson as well as penalties for allegedly operating and "aiding and abetting the operation of trucks over the highways of Texas ... without obtaining permits from the State Railroad Commission." *Id.* at 107. Although the trial court denied the relief requested by the State, the State continued to arrest, prosecute, and threaten to arrest Anderson's truck drivers. *Id.* In response, Anderson sought and was given a temporary injunction against various State officials to enjoin them "from further arresting, prosecuting, and threaten-

ing to arrest the drivers." *Id.* Anderson also filed a counterclaim alleging that the officials "were acting in excess of their authority" and seeking "an order enjoining such officers from interfering with the operation of [Anderson's] trucks." *Id.* at 108. On the same day that the counterclaim was filed, the State nonsuited its claims, *id.* at 107, and the State later filed a plea to the jurisdiction seeking to dismiss Anderson's counterclaim, *id.* at 108. Ultimately, the reviewing court determined that the district court had jurisdiction over the counterclaim. *Id.* at 110. When making this determination, the court explained that the State's "immunity from suit does not extend to a suit against state officers to enjoin the enforcement of an invalid law" and that "where a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy." *Id.* In light of the language addressing the ability of a defendant to bring

the City of Dallas issued a temporary license to Dynamic Cable Construction Corporation, Inc., to install a fiber-optic cable, and Dynamic Cable subcontracted with Reata Construction Corporation, which inadvertently drilled into a water main and flooded a nearby building. *Id.* at 373. The owner of the building sued Dynamic Cable and Reata, and "Reata filed a third-party claim against the City alleging that the City negligently misidentified the water main's location." *Id.* "Before answering Reata's third-party claim, the City intervened in the case, asserting negligence claims against Dynamic" Cable. *Id.* Subsequently, the City answered Reata's petition, "filed an amended plea in intervention asserting claims of negligence against Reata," and filed "a plea to the jurisdiction asserting" that it was immune from suit.[7] *Id.* "The trial court denied the City's plea to the jurisdiction, and the City" appealed that decision. *Id.* at 374.

On appeal, the supreme court explained that it has "generally deferred to the Legislature to waive immunity because the Legislature is better suited to address the conflicting policy issues involved." *Id.* at 375. However, the court also reasoned that because sovereign immunity is a "common-law doctrine," the judiciary has the responsibility of defining the "boundaries" of the doctrine and determining "under what circumstances sovereign immunity exists in the first instance." *Id.* Moreover, the court stated that if a "governmental entity ... chooses to engage in litigation to assert affirmative claims for *monetary damages*, the entity will presumably have made a decision to expend resources to pay litigation costs" and that if "the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted." *Id.* (emphasis added). Accordingly, the court explained that "a determination that a governmental entity's immunity from suit does not extend to a situation where the entity has filed suit is consistent with the policy issues involved with immunity." *Id.* In light of this reasoning, the court determined that "where the governmental enti-

a defensive complaint, the Dental Groups contend that *Anderson* compels a determination that the district court had jurisdiction over their counterclaims.

We believe that the Dental Groups' reliance on *Anderson* is misplaced. Although the supreme court may have indicated that Anderson was free to pursue its counterclaim in response to the State's suit, those assertions were framed by the type of relief that Anderson was seeking: prospective injunctive relief against state officials who were allegedly exceeding the scope of their authority. In a subsequent opinion, the supreme court later explained that the type of relief sought by Anderson is not barred by sovereign immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex.2009). In particular, the supreme court explained that "while [sovereign] immunity generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies in official-ca-

pacity suits against government actors who violate statutory or constitutional provisions." *Id.* at 368–69; *see also id.* at 372 (explaining that to fall within "th[e] *ultra vires* exception, a suit must ... allege, and ultimately prove, that the officer acted without legal authority"). Accordingly, we do not believe that the language in *Anderson* supports the Dental Groups' argument that by pursuing the enforcement action under the Act, the State waived its immunity against the types of counterclaims made by the Dental Groups.

7. "Sovereign immunity protects the State from lawsuits for money damages," *Texas Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex.2002), and political subdivisions of the State, including cities, have a similar immunity called governmental immunity, *see Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003). In this opinion, we will refer to both types of immunity as sovereign immunity.

ty has joined into the litigation process by asserting its own affirmative claims for *monetary relief*, we see no ill befalling the governmental entity or hampering of its governmental functions by allowing adverse parties to assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity." *Id.* at 376–77 (emphasis added). Moreover, the supreme court explained that its prior decisions stating "that immunity from suit does not bar claims against the governmental entity if the claims are connected to, germane to, and defensive to the claims asserted by the entity, in effect, modified the common-law immunity doctrine and, to an extent, abrogated immunity of the entity that filed suit." *Id.* at 377; *see City of Dall. v. Albert*, 354 S.W.3d 368, 375 (Tex.2011) (explaining that when governmental entity asserts affirmative claims for monetary relief, trial court has jurisdiction over those claims as well as "certain offsetting, defensive claims asserted against the entity .... because the judiciary has abrogated the [State]'s common law immunity from suit as to certain offsetting claims"). Further, the supreme court reasoned that "when the City filed its affirmative claims for relief as an intervenor, the trial court acquired subject-matter jurisdiction over claims made against the City which were connected to, germane to, and properly defensive to the matters on which the City based its claim for *damages.*" *Reata*, 197 S.W.3d at 377 (emphasis added); *see City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 524 (Tex.App.—Austin 2014, no pet.) (stating that courts have determined that compulsory counterclaim to claim by governmental entity "would necessarily qualify as one that is 'germane to,' 'connected with,' and/or 'properly defensive' to it"). Finally, the supreme court determined that by filing that suit, "the City must participate in the litigation

process as an *ordinary litigant*" and decided "to leave its sphere of immunity from suit for claims against it which are germane to, connected with and properly defensive to claims the City asserts." *Reata*, 197 S.W.3d at 377 (emphasis added). *But see Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 407 (Tex.1997) (explaining that to "state what happens *if* the State consents to be sued says nothing about whether the State consents to be sued"), *superseded by statute on other grounds as stated in General Servs. Comm'n v. Little–Tex Insulation Co., Inc.*, 39 S.W.3d 591, 593 (Tex.2001).

In light of the supreme court's decision allowing Reata to pursue claims against the City, the Dental Groups assert that they should similarly be allowed to pursue counterclaims against the State after the State initiated this enforcement action under the Act. However, it is not entirely clear that the recovery sought by the State in this enforcement action qualifies as a suit for *damages* or *monetary relief* as those terms were used in *Reata* or that the State was acting as an *ordinary litigant* when it pursued this enforcement action. In *Reata*, the City of Dallas was seeking damages stemming from Reata's alleged negligence. 197 S.W.3d at 373; *see also Albert*, 354 S.W.3d at 371–72, 375–76 (addressing suit in which firefighters sued City of Dallas alleging that City had underpaid them and in which City filed counterclaim asserting that it had overpaid firefighters and seeking "to recover alleged overpayments" and concluding that City's decision to nonsuit its counterclaims did not deprive trial court of jurisdiction over firefighters' claims to extent that claims served as offset to City's counterclaims but that after nonsuit by City, firefighters' claims could no longer serve as offset against any recovery by City); *Carowest Land*, 432 S.W.3d at 510, 527 (de-

termining that trial court had jurisdiction over claims filed by party after City of New Braunfels filed counterclaims for breach of contract); *City of San Antonio v. KGME, Inc.*, 340 S.W.3d 870, 873, 877–78 (Tex.App.–San Antonio 2011, no pet.) (applying *Reata* and affirming trial court's determination that trial court had jurisdiction over party's contract claims and prompt-payment claims when City of San Antonio filed counterclaim for breach of contract based on same facts and controversy); *Harris Cty. v. Luna–Prudencio*, 294 S.W.3d 690, 694, 698 (Tex.App.–Houston [1st Dist.] 2009, no pet.) (invoking *Reata* and determining that trial court had jurisdiction over party's counterclaim against county when county filed suit against party for damages sustained in car accident involving party and one of County's employees). In contrast, by bringing this action, the State seeks to punish the Dental Groups for allegedly violating a public-welfare statute and to deter others from committing similar violations, and the State sought to achieve these goals by using the enforcement measures in the Act to require the payment of civil penalties that well exceeds any amount of Medicaid funds that were expended by the State. *See* Tex. Hum. Res.Code § 36.052(a). Moreover, the provision authorizing those penalties does not refer to them as "damages" and does not limit the recovery to any type of overpayment; rather, the provision authorizes the full recovery of the payment as well as an additional double recovery of the payment plus other potential penalties. *See id.* In fact, in section 36.006, the legislature distinguished civil penalties under the Act from damages. *See id.* § 36.006. Specifically, section 36.006 provides that "[t]he application of a civil remedy under this chapter does not preclude the application of another common law, statutory, or regulatory remedy, except that a person may not be liable for a civil remedy under this chapter and civil damages ... if the civil remedy and civil damages ... are assessed for the same act." *Id.*[8]

Recently, one of our sister courts of appeals was asked to consider the distinction between when the State acts as a private litigant seeking damages and when the State acts in its sovereign capacity and uses its police powers to impose and recover a civil penalty. *See State v. Emeritus Corp.*, 466 S.W.3d 233 (Tex.App.–Corpus Christi 2015, pet. filed). In *Emeritus*, the State filed suit against Emeritus and sought civil penalties under the Texas Deceptive Trade Practices and Consumer Protection Act and the Assisted Living

**8.** The Act does mention damages in the provisions authorizing actions by private persons on behalf of the State. In particular, section 36.115 prohibits retaliation against persons who initiate an enforcement action under the Act or assist "in an action" and specifies that if retaliation is taken against the person, the person "is entitled to," among other things, "not less than two times the amount of back pay, interest on the back pay, and compensation for any special *damages* sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees." Tex. Hum. Res.Code § 36.115(a) (emphasis added). When describing the governing standard of proof, the Act also mentions damages in section 36.1021 and provides that "the state or person bringing the action must establish each element of the action, including damages, by a preponderance of the evidence." *Id.* § 36.1021. Given that section 36.1021 is found in the subchapter governing enforcement actions brought by private parties on behalf of the State, that damages are only mentioned in the context of retaliation against private parties who bring enforcement actions on behalf of the State or assist in those actions, and that the Act does not refer to the civil penalties in section 36.052 as damages, we do not believe that the use of the word "damages" in section 36.115 and 36.1021 supports the assertion that the State is seeking "damages" or "monetary relief" as those terms were used in *Reata*.

Facility Licensing Act after one of the residents living in an assisted-living facility run by Emeritus was left unsupervised and died. *Id.* at 237–38. After the State filed its suit, Emeritus argued that the State's suit was a health-care-liability claim and moved to dismiss the suit on the ground that the State failed to file a timely expert report under the Texas Medical Liability Act. *Id.* at 238; *see* Tex. Civ. Prac. & Rem.Code § 74.351(a) (requiring party pursuing health-care claim to file expert report). The trial court granted the motion to dismiss. *Emeritus*, 466 S.W.3d at 238.

On appeal, the State argued that the trial court erred because the State was not seeking "damages as required by the statutory definition of a claimant" under the Texas Medical Liability Act. *Id.* at 247. When deciding that the term "'damages' ... does not include civil penalties sought by the State rather than a private litigant," *id.* at 249, our sister court noted that the definition of "'damages' means money claimed by, or ordered to be paid to, a person as compensation for loss or injury" and distinguished that from the definitions for "'penalty' [as meaning] a punishment imposed on a wrongdoer, usually in the form of imprisonment or a fine" and for "'civil penalty' [as meaning] a fine assessed for a violation of a statute or regulation," *id.* at 247 (citing *Black's Law Dictionary* 355, 981 (9th Ed.2010)). Moreover, our sister court explained that "various federal courts have rejected the proposition that damages, which are compensatory in nature and payable to a private litigant, are congruent with civil penalties, which are punitive in nature and payable to a governmental entity." *Id.* at 247–48; *see Gabelli v. Securities & Exch. Comm'n,* —— U.S. ——, 133 S.Ct. 1216, 1223, 185 L.Ed.2d 297 (2013) (stating that "[i]n a civil penalty action, the Government is not only a different kind of plaintiff, it

seeks a different kind of relief" because "penalties ... go beyond compensation [and] are intended to punish[ ] and label defendants wrongdoers"); *Tull v. United States,* 481 U.S. 412, 422, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (providing that penalties are "intended to punish culpable individuals" and not "to extract compensation or restore the status quo"); *Ellett Bros., Inc. v. United States Fid. & Guar. Co.,* 275 F.3d 384, 388 (4th Cir.2001) (noting that "civil penalties ... are not 'damages' payable to the victim, but fines or assessments payable to the government"); *see also Brown v. De La Cruz,* 156 S.W.3d 560, 561 (Tex.2004) (explaining that statutory penalties are generally "not payable to a private litigant" but that "damages" may be awarded to private litigants). Moreover, our sister court reasoned that "the State, acting in its sovereign capacity seeking civil penalties, rather than damages, is not a claimant subject to the expert report requirement under the" Texas Medical Liability Act and that the Texas Medical Liability Act did "not apply to the case." *Emeritus,* 466 S.W.3d at 249; *see Malouf v. State ex rel. Ellis,* 461 S.W.3d 641, 647 (Tex.App.–Austin 2015, pet. filed) (determining that when State brings enforcement action under Texas Medicaid Fraud Prevention Act, it "is not a 'person' within the definition of 'claimant' under the [Texas Medical Liability Act] and, thus, not subject to the expert report requirement").

When reaching this determination, our sister court also relied on the fact that the "fundamental purposes" for the Texas Deceptive Trade Practices and Consumer Protection Act and the Assisted Living Facility Licensing Act differ from that of the Texas Medical Liability Act. *Emeritus,* 466 S.W.3d at 249. In particular, the court noted that the purpose of the Texas Medical Liability Act is to impose tort reform in

order to make health care more affordable but that the purpose of the former two statutes is to protect the populace and that those statutes "allow and engender a duty on the part of the State to enforce those statutes" through the State's police power; which "is a grant of authority from the people to their governmental agents for the protection of the health, the safety, the comfort, and the welfare of the public." *Id.* at 249–50. For those reasons and others, our sister court concluded that "[t]he State is not subject to the expert report requirement in the [Texas Medical Liability Act] when it, pursuant to its police power and acting in its sovereign capacity, seeks statutory civil penalties and injunctive relief." *Id.* at 251.

Although we recognize that the issues, statutes, and circumstances in *Emeritus* differ from those in the current case, we believe that the analysis from *Emeritus* supports a determination that the civil penalties that the State is seeking against the Dental Groups do not qualify as *damages* or *monetary relief* as those terms were used in *Reata.* Moreover, in light of the fact that the purpose of the Act is to protect the populace and public fisc by punishing service providers who seek compensation through Medicaid that they are not entitled to and to discourage other service providers from behaving similarly, the analysis from *Emeritus* also persuades us that when the State pursues an enforcement action under the Act, it is not acting as an ordinary or private litigant as described in *Reata* but is instead acting in its sovereign capacity and exercising its police powers.[9] Accordingly, although the State initiated the enforcement action forming the subject of this appeal, we conclude that the State did not "leave its sphere of immunity from suit for claims against it which are germane to, connected with and properly defensive to" the claims that the State asserted. *See Reata,* 197 S.W.3d at 377.[10]

9. As further support for the idea that enforcement actions under the Act are not suits for damages filed by the State in its private capacity, we note that the Act appears to have its origins in criminal rather than civil law. Specifically, most of the unlawful actions listed in section 36.002 of the Act seem to be based on the federal law outlining unlawful acts involving federal health-care programs and setting out criminal penalties for those acts. *Compare* Tex. Hum. Res.Code § 36.002, *with* 42 U.S.C. § 1320a–7b. Moreover, a prior version of section 36.131 of the Human Resources Code criminalized the commission of an unlawful act listed in section 36.002. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 1153, § 4.09, sec. 36.131, 1997 Tex. Gen. Laws 4324, 4349 (setting out circumstances in which unlawful acts under section 36.002 are punished as misdemeanors or as felonies), *repealed by* Act of May 23, 2005, 79th Leg., R.S., ch. 806, § 19, sec. 36.131, 2005 Tex. Gen. Laws 2778, 2787.

10. As authority for their arguments attacking the district court's ruling, the Dental Groups cite federal cases stating that counterclaims are permitted under the federal False Claims Act. *See Texas v. Caremark, Inc.,* 584 F.3d 655, 657 (5th Cir.2009) (explaining that False Claims Act is analogous to Texas Medicaid Fraud Prevention Act). In particular, federal courts have determined that sovereign immunity is not a bar to compulsory counterclaims under the False Claims Act. *See id.* at 659. Compulsory counterclaims are "those 'arising out of the same transaction or occurrence which is the subject matter of the government's suit.'" *Id.* (quoting *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967)). Moreover, "'the relief sought must be of the same kind or nature as the [government's] requested relief,'" and "'any damages sought cannot exceed the amount sought by the government's claim.'" *United States v. Intrados/Int'l Mgmt. Grp.,* 277 F.Supp.2d 55, 62 (D.D.C.2003) (quoting *United States v. Ownbey Enters., Inc.,* 780 F.Supp. 817, 820 (N.D.Ga.1991)) (alteration in *Intrados* ). Not all counterclaims are allowed; on the contrary, "[c]ounterclaims ... that are based on damages which are independent claims may be permitted, so long as the claims do not 'have the effect of providing for indemnification or contribution,'" but counterclaims that

For these reason, we overrule the Dental Groups' first issue on appeal.[11]

## Dismissal of the Dental Groups' Third-Party Claims

In their second issue on appeal, the Dental Groups argue that the district court erred by dismissing their third-party claims against Xerox. When asserting in its motion that the third-party claims should be dismissed, the State argued that the Act does not authorize third-party claims or, alternatively, that the Dental Groups' claims against Xerox are barred by sovereign immunity. In its order, the district court granted the State's motion to dismiss and determined that the Act does not authorize third-party claims and that "the State is entitled to bring this action against defendants to the exclusion of other parties."

When presenting their second issue on appeal, the Dental Groups incorporate their arguments regarding the propriety of dismissing their counterclaims against the State and similarly urge that their third-party claims are permissible.[12] In its appellee's briefing, Xerox asserts that "[a]lthough Xerox benefits from the State's argument that the trial court adopted in this case, Xerox does not agree with it. There is no prohibition against ... third-party claims in a Texas Medicaid fraud suit. Because the order under review assumes there is, Xerox agrees that it is erroneous." Moreover, Xerox argues that chapter 33 of the Civil Practice and Remedies Code applies to claims under the Act and allows for contribution claims. *See* Tex. Civ. Prac. & Rem.Code § 33.001–.017 (allowing in tort claims for person to seek recovery from "a defendant, settling person, or responsible third party" who "is found responsible for a percentage of the harm for which relief is sought"). Accordingly, Xerox contends that even if some or

require a determination that the defendant is liable under the False Claims Act are barred by sovereign immunity. *United States v. Campbell*, Civ. A. No. 08–1951, 2011 WL 43013, at *11 (D.N.J. Jan. 4, 2011) (quoting *United States ex rel. Miller v. Bill Harbert Int'l Constr. Inc.*, 505 F.Supp.2d 20, 27 (D.D.C. 2007)). In other words, a defendant may pursue a counterclaim if the counterclaim is a cause of action for damages that are independent of the defendant's liability under the False Claims Act. *Id.; cf. Mortgages, Inc. v. United States Dist. Court for Dist. of Nev. (Las Vegas)*, 934 F.2d 209, 213 (1991) (explaining that purpose of False Claims Act is to deter future fraudulent claims and that passage of False Claims Act was not "intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against a qui tam plaintiff with 'unclean hands' ").

Having determined that the district court properly dismissed the Dental Groups' counterclaims under Texas law, we need not consider federal case law addressing the False Claims Act. However, we do note that it is not entirely clear that all of the Dental Groups' counterclaims would be permissible under the reasoning of the cited federal cases. At least some of the Dental Groups' counterclaims seem to be premised, in part, on the idea that the State and Xerox were also responsible for misrepresentations that the Dental Groups may have made when seeking prior authorization and when seeking and obtaining payment for services that they provided. In other words, it is not entirely clear that all of the Dental Groups' counterclaims are independent of their liability under the Act.

11. Having determined that the district court correctly granted the State's plea to the jurisdiction on the ground discussed above, we need not address the State's other jurisdictional arguments contained in its plea.

12. As an alternative form of relief, the Dental Groups ask this Court to "reverse the trial court's grant of the Motion to Dismiss [their] third party claims, and instruct the [district] court to sever [their] third party claims against Xerox into a different cause." Given our ultimate resolution of this issue, we need not address this alternative request, but we do note that it does not appear that the Dental Groups made any request to sever their claims to the district court.

all of the Dental Groups' third-party claims are contribution claims, those claims may be pursued under the Act.

The portion of the order forming the subject of this issue granted the State's motion to dismiss the Dental Groups' third-party claims against Xerox on *non-jurisdictional* grounds. Moreover, as mentioned above, that order is an interlocutory order because it "fail[ed] to dispose of all issues and parties." *See B.C. v. Rhodes,* 116 S.W.3d 878, 881 (Tex.App.—Austin 2003, no pet.). While the order disposed of some of the issues between the parties, it did not resolve the allegations made by the State asserting that the Dental Groups violated the Act. Generally speaking, "[a]ppellate courts have jurisdiction over appeals from final judgments and certain interlocutory orders that the legislature has designated appealable." *Id.; see Bally Total Fitness Corp. v. Jackson,* 53 S.W.3d 352, 352 (Tex.2001) (explaining that "[a] party may not appeal an interlocutory order unless authorized by statute"). Stated differently, if there is no statute authorizing an appeal of an interlocutory order, "[a]n appellate court lacks jurisdiction to review" the interlocutory order. *Qwest Commc'ns Corp. v. AT & T Corp.,* 24 S.W.3d 334, 336 (Tex.2000). In section 51.014 of the Civil Practice and Remedies Code, the legislature has identified the types of interlocutory orders that parties may appeal from. *See* Tex. Civ. Prac. & Rem.Code § 51.014. That section does authorize an appeal for the Dental Groups' first issue because that first issue challenged the granting of "a plea to the jurisdiction by a governmental unit." *See id.* § 51.014(a)(8). But section 51.014 does not authorize an interlocutory appeal of the granting of a motion filed by a governmental unit seeking to dismiss third-party claims on non-jurisdictional grounds. *See id.* § 51.014.

In light of the preceding, we must conclude that this Court does not have jurisdiction over the trial court's ruling regarding the State's motion to dismiss the Dental Groups' third-party claims. When a party appeals from two interlocutory rulings, "only one of which is made appealable by statute, the proper course is to dismiss that portion which is non-appealable, and to rule on the portion from which an appeal may be taken." *Bobbitt v. Cantu,* 992 S.W.2d 709, 712 (Tex.App.—Austin 1999, no pet.).

In supplemental briefing, Xerox contends that this Court does have jurisdiction over the district court's dismissal of the third-party claims under section 51.014 because although the State styled its motion as a motion to dismiss third-party claims, the State also argued in its motion, as mentioned above, that the Dental Groups' third-party claims were barred by sovereign immunity due to the fact that Xerox was working on behalf of the State during the period of time relevant to this appeal. *See Ryland Enters., Inc. v. Weatherspoon,* 355 S.W.3d 664, 666 (Tex. 2011) (recognizing that "courts should acknowledge the substance of the relief sought despite the formal styling of the pleading"). Moreover, Xerox argues that when seeking to dismiss the Dental Groups' third-party claims, the State presented similar statutory arguments that it made in its plea to the jurisdiction seeking to dismiss the Dental Groups' counterclaims. For these reasons, Xerox contends that this Court has jurisdiction to consider the district court's dismissal of the Dental Groups' third-party claims.

Although we recognize that the supreme court has explained that appellate courts may review under subsection 51.014(a)(8) a ruling by a trial court pertaining to jurisdictional challenges made by a governmental unit even if the document containing

the jurisdictional challenges was not styled as a plea to the jurisdiction, we do not believe that there has been a *ruling* on the jurisdictional grounds asserted. *See Thomas v. Long*, 207 S.W.3d 334, 339–40 (Tex.2006) (determining that appellate court had jurisdiction over jurisdictional claims that were made in governmental unit's motion for summary judgment when trial court "implicitly denied" jurisdictional challenges by reaching merits of opposing party's claims that governmental unit alleged trial court did not have jurisdiction over); *see also Surgitek, Bristol–Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) (explaining that determinations regarding whether claims may be pursued in interlocutory appeal are not "constrained by the form or caption of a pleading" and instead should focus on merits of relief sought). As set out above, the district court did not enter an order dismissing the Dental Groups' third-party claims on jurisdictional grounds; on the contrary, when making its ruling on the third-party claims, the district court explained that it was granting the State's "Motion to Dismiss Third Party Claims" and dismissing the claims on the non-jurisdictional grounds urged by the State. In particular, the district court determined that the Act and other relevant statutes allow the State to bring these types of actions "against defendants to the exclusion of other parties."[13] Moreover, this case does not present a situation like that in *Thomas* where a

trial court made an implicit ruling on the jurisdictional arguments; on the contrary, the district court in this case made no determinations regarding the merits of the third-party claims and instead dismissed them. *See Thomas*, 207 S.W.3d at 339; *cf. Waller Cty. v. City of Hempstead*, 453 S.W.3d 73, 76 (Tex.App.–Houston [1st Dist.] 2014, pet. denied) (determining that appellate court "lack[ed] jurisdiction over ... purported interlocutory appeal" and dismissing appeal for want of jurisdiction because "the trial court did not rule on the plea to jurisdiction (either expressly or implicitly through its denial of Waller County's motion for summary judgment")).

For all of these reasons, we dismiss the Dental Groups' second issue on appeal for want of jurisdiction and express no opinion regarding the district court's ruling that dismissed the Dental Groups' third-party claims. *See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(8); *see also Art Inst. of Chi. v. Integral Hedging, L.P.*, 129 S.W.3d 564, 570 (Tex.App.–Dallas 2003, no pet.) (explaining that permissible appeal of interlocutory order "cannot be used as a vehicle for carrying other non-appealable interlocutory orders to the appellate court"); *Bobbitt*, 992 S.W.2d at 713 (determining that trial court's granting of partial summary judgment is not appealable even though grant was in order that also granted relief that could be subject of interlocutory appeal).[14]

---

13. In its order, the district court explained that its ruling was consistent with its other "rulings in the State's litigation against Xerox." When explaining one of those prior rulings granting the State's motion to strike Xerox's third-party petition in the enforcement action against Xerox, the district court determined that the Act does not authorize those types of claims.

14. As mentioned earlier, the State also filed an enforcement action against Xerox under the Act. In that proceeding, Xerox asserted

third-party claims and sought to designate service providers as responsible third parties, and the district court granted the State's motion to strike the third-party claims and denied Xerox's motion to designate responsible third parties. Xerox challenged those rulings by filing a petition for writ of mandamus in this Court. In its mandamus petition, Xerox presented similar arguments regarding the propriety of third-party claims that it makes in its appellee's brief in this case. Previously, this Court denied Xerox's petition for writ of

## CONCLUSION

Having overruled the Dental Groups' first issue on appeal and having dismissed their second issue for want of jurisdiction, we affirm the portion of the district court's order granting the State's plea to the jurisdiction and dismissing the Dental Groups' counterclaims against the State.

mandamus. *See In re Xerox Corp.*, No. 03–15–00401–CV, 2016 WL 768134, *1–2 (Tex.App.–Austin Feb. 26, 2016, orig. proceeding) (mem. op.).

In its supplemental briefing in this case, Xerox also argues that in the event that this Court determines that it does not have jurisdiction over the district court's ruling dismissing the Dental Groups' third-party claims, this Court should treat the Dental Groups' second appellate issue as invoking our original jurisdiction and determine whether mandamus relief is warranted regarding the district court's ruling dismissing the Dental Groups' third-party claims. Moreover, Xerox purports to incorporate its analysis from its own petition for writ of mandamus in which it challenged the district court's ruling striking Xerox's third-party petition seeking recovery from various service providers. *See id.* Assuming without deciding that Xerox's purported invocation of our original jurisdiction is proper despite the fact that the Dental Groups have not made the request at issue and despite Xerox's role in this appeal, *see CMH Homes v. Perez*, 340 S.W.3d 444, 452–54 (Tex.2011) (treating *appellant's* briefing as petition for writ of mandamus where appellant asked that appeal be treated as mandamus petition and where policy reasons compelled treatment as mandamus petition); *Waste Mgmt. of Tex., Inc. v. Blackwell*, 130 S.W.3d 337, 342–43 (Tex.App.–Houston [14th Dist.] 2004, no pet.) (addressing whether mandamus relief was appropriate when *appellant* filed purported interlocutory appeal as well as petition for writ of mandamus raising same issues and when appellate court determined that it did not have jurisdiction over interlocutory appeal), we note as set out above that we denied Xerox's petition for writ of mandamus. Accordingly, were we to treat the Dental Groups' second appellate issue as seeking mandamus relief, we would similarly deny the request.